## Case No. 1,022.
### BARNES v. STRAUS.
[9 Blatchf. 553;[1] 2 O. G. 62; 5 Fish. Pat. Cas. 531; Merw. Pat. Inv. 204.]

Circuit Court, S. D. New York. May 23, 1872.

PATENTS FOR INVENTIONS — CORSET SPRINGS—INFRINGEMENT.

1. The invention described in reissued letters patent granted to Frances L. Barnes, executrix of, &c., of Samuel H. Barnes, deceased, August 31st, 1869, for an "improvement in corset-springs," the original patent having been granted to said Samuel H. Barnes, as inventor, July 17th, 1866, is, the arrangement in a pair, combined by clasps, on a corset, of two springs, each spring consisting of two metallic plates, placed one upon another, and fastened together at their centres, but so connected, at or near each end, that they can play or move upon each other in the direction of their length, and be prevented from sliding off each other laterally.

2. Such arrangement did not exist before the invention of Barnes.

3. The claims of such reissued patent are valid, and claim, under the expression, "a pair or set of corset springs," two corset-springs connected by clasps, each spring being constructed as above mentioned.

4. The invention held not to have been anticipated by a carriage spring which existed before, or by a single corset-spring, composed of two plates, with provision for play, but with no means for combining it with a second spring.

5. The combination, consisting of the two springs connected by the clasps, exists, pro tanto, so as to be an infringement, when the springs and clasps are made, ready to be inserted in the corset.

[In equity. Bill by Frances Barnes, executrix of Samuel H. Barnes, deceased, against Ferdinand Straus, for infringement of letters patent. Decree for complainant.]

George Gifford, for plaintiff.

Charles F. Blake, for defendant.

[Final hearing on pleadings and proofs. Suit brought upon letters patent for an "improvement in corset-springs," granted to Samuel H. Barnes, July 17, 1866; reissued to plaintiff as executrix of said Barnes, May 12, 1868; again reissued June 29, 1869; and again August 31, 1869. The nature of the invention and claims are fully set forth in the opinion.

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. Syllabus from 9 Blatchf. 553, and statement from 5 Fish. Pat. Cas. 532. Merw. Pat. Inv. 204, only contains partial report.]

[In the foregoing engravings, B represents the lower plate, and B² the upper; the two being connected by pins in slots, a, and the two parts of the corset-spring being connected by clasps, C, and buttons, D.] [2]

BLATCHFORD, District Judge. This suit is brought on reissued letters patent granted to the plaintiff August 31st, 1869, for an "improvement in corset-springs," the original patent having been granted to Samuel H. Barnes, as inventor, July 17th, 1866, and reissued to the plaintiff, May 12th, 1868, and again June 29th, 1869. In the specification it is stated that Barnes invented "a new and improved corset-spring." The specification says: "The present invention consists in forming the springs of corsets of two or more metallic plates, placed one upon another, and fastened together at their centre, but so connected, at or near each end, that they can play or move upon each other in the direction of their length, as the springs are bent, whereby their flexibility and elasticity are greatly increased, while at the same time much strength is obtained, and the springs rendered much more durable than the springs for corsets now in general use." There are two figures in the drawings, one giving a front view "of the two springs of the corset," that is, one spring of two plates on one side of the vertical opening in the corset, and another spring of two plates on the other side of such opening, "having the ordinary clasps for fastening the corset about the waist of the person who is to wear it." The specification states that the drawings represent two springs of a corset, properly bent in the direction of

[2] [From 5 Fish. Pat. Cas. 532.]

their length, to conform to the body or waist of a person, each spring composed of two metallic plates, placed one upon the other, the under one a little longer than the upper one, and secured at their centres, or midway between their two ends, this being done, in one of the springs, by the rivet which secures the ordinary corset clasp to the spring, and, in the other one, by a headed rivet on which such clasp is interlocked by its eye; that, at or near each end of each short plate, is a short slot, extending in the direction of its length, through which projects the rounded end or head of a pin fixed in the under plate; and that, by means of these slots, as the corset-springs are bent, the plates constituting the same can play or move, the one upon the other, the heads of the pins preventing the plates from springing apart from each other or sliding off laterally. The specification proceeds: "From the above description, it is plain to be seen, by forming the corset-springs of two plates, (one or more may be used, if desired, laid one upon the other, but so connected together, that the several plates constituting such springs can freely play upon each other in the direction of their length,) that the flexibility, pliability or elasticity of the springs is much increased, without in the least degree impairing their strength, rendering them much more durable and serviceable than the ordinary corset springs now in general use— an advantage and result of the utmost importance and utility. Although the springs have been herein above explained as formed of two metallic plates, laid one upon the other, and secured together as described, three or more may be used, but two are sufficient for ordinary corsets, it being distinctly understood that this invention is not limited to any particular number of plates which may be employed to form the springs, whether one or more, it simply consisting in so securing the several plates constituting the springs, to each other, that they can freely move or play upon each other. It may be stated that the terms "corset-steel," "corset-spring" and "corset-clasp," are each and all employed by the trade to designate a pair of springs, steels or stiffeners, connected by suitable clasps, whereby they are not only adapted to stiffen the front of the corset, but to fasten the two edges of the same together." The claims are these: "(1.) A pair or set of corset springs, each spring consisting of two or more metallic plates, placed one upon another, and fastened together at their centres, but so connected, at or near each end, that they can play or move upon each other in the direction of their length, and be prevented from sliding off each other laterally. (2.) A pair or set of corset springs, each spring composed of two or more metallic plates, placed one above another and fastened together at their centres, and so connected, at or near each end, that they can move or play upon each

other in the direction of their length. (3.) A pair or set of corset-springs, each spring consisting of two or more metallic plates, placed one upon another, and fastened together at their centres, but so connected, at or near each end, that they can play or move upon each other in the direction of their length, and be prevented from sliding off each other laterally, the clasps by which the springs are combined, except the centre one, being attached to only one of the plates."

The patent is attacked for want of novelty. The evidence shows that the arrangement in a pair, combined by clasps, on a corset, of two springs, each spring consisting of two metallic plates, placed one upon another, and fastened together at their centres, but so connected, at or near each end, that they can play or move upon each other in the direction of their length, and be prevented from sliding off each other laterally, did not exist before the invention of such arrangement by Barnes. The arrangement is useful, and Barnes invented it. Was the invention a patentable one, in view of what existed before?

The "ordinary" springs for corsets, referred to in the specification as "in general use," consisted of two springs, one on each side of the vertical opening in the corset, each formed of a single metallic plate, and the two springs being combined by clasps, the same as are referred to in the specification as the "ordinary corset-clasp," consisting of a clasp with an eye on one spring and a head on the other spring. The whole arrangement and combination constituted, as the specification says, a "corset-spring," embracing the two springs, one on each side of the vertical opening in the corset, connected by the clasps. In this arrangement, Barnes substituted, for the single-plate springs, double-plate springs. By having two plates he secured greater strength. But, in order to maintain the flexibility of the spring, and prevent danger of fracture to the metal, in the bending of it, in use in the corset, he fastened the two plates together at their centres, and made lengthwise slots in the upper plate, near its end, through which headed pins, fastened to the lower plates, projected, which allowed the two plates to slide along each other lengthwise, when bent, while the headed pins prevented the plates from slipping by each other sidewise or springing apart from each other facewise. This provision was necessary in order to develop the advantage of a spring made of two plates; and, in order not to prevent such sliding action of the plates, it was further necessary that the clasping devices, other than those at the centre of the length of the spring, should not be fastened through both plates. All this Barnes did, and this, in fact was his real invention. He did not merely substitute two plates for one plate.

It being thus seen what Barnes did, the claims of the patent must be construed, if that can properly be done, so as to cover his real invention. Although the specification, in one place, speaks of the invention as consisting in making a spring of two plates which can play upon each other in the direction of their length, as the spring is bent, and, in another place, speaks of it as consisting in so securing the plates constituting the springs, to each other, that they can freely play upon each other, yet, in view of the whole specification, and of the fact that it says that the term "corset-spring" is employed, by the trade, to designate a pair of springs, connected by suitable clasps, and thus adapted not only to stiffen the front of the corset, but to fasten its two edges together, the expression, "a pair or set of corset-springs," where it occurs, in each one of the three claims, cannot be construed to mean anything else but two corset-springs connected by the clasps referred to, each spring being constructed in the manner described. In this view, the claims of the patent are all of them valid.

A spring existed before, used in a carriage, which consisted of several metallic plates, placed one upon another and fastended together at their centres, the shorter ones above the longer ones, but so connected at or near each end, by headed pins playing in and through slots, that they could move upon each other in the direction of their length, and be prevented from sliding off each other laterally. I think the evidence shows that there was something more than the mere new use of an old article, and more than the mere use of an old article for a new purpose, and more than the mere use of two springs, one of which had been used before, in making the combination which Barnes made. The carriage-spring differed from the corset-spring in not having that flexibility at the centre of its length which the corset-spring has and must have, and in not curving in one direction at one end and in the other direction at the other end, as the corset-spring is shown in the drawings of the patent to do. In other words, the carriage-spring was not a corset-spring, and could not be used as such, without such a change as involved invention.

The French corset-spring put in evidence was a single spring, not a combined pair of springs; and, although it was composed of several metallic plates, placed one above another and fastened together at their centres, and free to move or play upon each other in the direction of their lengths, yet it had no such provision as the slots and fixed pins with heads, which Barnes introduced, nor any other provision for preventing the plates from becoming disengaged facewise or laterally. The French spring had no means of combining it with a second spring, when the two should be used one on each side of the vertical opening in a corset.

The pair of springs of the patent, that is, the two springs connected by the clasps, con-

stitute, as a whole, a patentable combination. The two springs and the clasps connecting them are all required to make the article, as "a corset-spring," at all useful, in performing the functions which it performs when the springs are actually combined by the clasps when the corset is worn. The combination does not have its full effects developed until it is used in the corset, yet it exists pro tanto, so as to be an infringement, when the springs and clasps are made, ready to be inserted in a corset. The elements which make up the combination called "a corset-spring" co-operate mechanically to a common mechanical end, which end is developed in the use of the springs and clasps in the corset when worn. The fact that the clasps were used before with the single springs, does not destroy the novelty and patentability of the combination and arrangement made by Barnes.

There must be a decree for the plaintiff, for a perpetual injunction and an account, with costs, as the infringement is not denied.

[NOTE. Patent No. 56,345 was granted to S. H. Barnes, July 17, 1866: reissued August 31, 1869, (No. 3,624;) reissued January 7, 1873, (No. 5,216.) For other cases involving this patent, see Egbert v. Lippmann, Case No. 4,306; Egbert v. Lippmann, 104 U. S. 333.]