## EGRY REGISTER CO. v. STANDARD REGISTER CO.*

(Circuit Court of Appeals, Sixth Circuit. June 14, 1920.)

Nos. 3238, 3323.

1. Patents ⬯328—940,481, claims 1 and 2, for improvements in shipping bill register, held to disclose invention.

Claims 1 and 2 of the Schirmer patent, No. 940,481, for the combination of a feeding device and tearing-off mechanism for shipping bill registers, disclose invention, though each of the elements was anticipated by prior patents.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 14, 65 L. Ed. —.

2. **Patents ⊷168(2)—Acquiescence in rejection of claims involving one element does not estop claim of combination including it.**

The acquiescence by an applicant for patent in rejection by the Patent Office of claims for one element of his machine does not estop him from relying on claims for a combination involving that element.

3. **Patents ⊷66—Part of prior art only as to disclosure on their face.**

Previous patents are part of the prior art only by what they disclose on their face.

4. **Patents ⊷81—Evidence held not sufficient to show prior use.**

Testimony that machines constructed under a prior patent were substantially the same as plaintiff's, though the drawings of the prior patent disclosed a different construction, which testimony was sharply disputed, and not corroborated by the production of machines, does not show the alleged prior use by evidence of the high degree required therefor.

5. **Patents ⊷25—Combination whose elements coact is not mere aggregation.**

A combination is not unpatentable as a mere aggregation, if its two elements so coact as to produce a new and useful result, not a mere aggregation of several results.

6. **Patents ⊷323—New reference held not to entitle defendant to reopen decree.**

New references after a decree in a suit for infringement of patents for shipping bill registers, all of which were drawn from other arts and failed to disclose one element of the claims in suit, do not warrant the reopening of a decree finding infringement.

7. **Patents ⊷328—940,481, for a shipping bill register, held infringed.**

Schirmer patent No. 940,481, for a shipping bill register, involving combination of feeding device and tearing-off apparatus, *held* infringed, though the clamping means in the tearing-off device in defendant's register was operated by the manual lifting of the strips in the tearing-off process.

8. **Patents ⊷245—Substitution of manual for mechanical operation held not to avoid infringement.**

While a mere manual operation is not an equivalent for mechanical operation, the substitution in a shipping bill register for a mechanically operated pressure roller during the tearing-off process of a bar operated by the manual operation of tearing off the slips does not avoid infringement.

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by the Standard Register Company against the Egry Register Company. Decree for plaintiff, motion to reopen the case for newly discovered evidence denied, and defendant appeals. Affirmed.

H. A. Toulmin, of Dayton, Ohio (Toulmin & Toulmin, of Dayton, Ohio, on the brief), for appellant.

Alfred M. Allen, of Cincinnati, Ohio (Allen & Allen, of Cincinnati, Ohio, and Earl H. Turner, of Dayton, Ohio, on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Suit on United States patent to Schirmer, No. 940,481, November 16, 1909, for improvements in shipping bill register. Defendant appeals, first, from an interlocutory decree finding the first and second claims of the patent valid and infringed; and, second, from the refusal of the District Court to re-

⊷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

open the case, and vacate the decree therein, in view of alleged newly discovered evidence.

The invention relates to so-called autographic registers for making a plurality of shipping bills, sales slips, and the like; the register consisting of a case containing two or more rolls of paper appropriately journaled therein, the paper on each roll being drawn therefrom to and upon a writing tablet in the top of the case, entries made upon the top sheet being transferred to the lower ones by the use of interleaved carbon paper, the sheets being then fed forward the length of the bill, when they are severed by a cut-off arrangement at the rear end of the register. Fresh sheets are thus left ready for use upon the writing tablet.

In the machines in use prior to Schirmer there had always been more or less difficulty in maintaining the writing lines of the various superimposed strips of paper in uniform positions, due to irregularity of feed, resulting from a variety of causes, prominent among which are variations and irregularities in the thickness of the paper (not only as between different rolls, but in the same roll), slipperiness and tendency to shrink or stretch. Uniformity of alignment became even more necessary in the case of bills carrying various printed items thereon, as improper alignment might easily make an entry opposite a given division in the upper sheet appear opposite a different division in a lower sheet.

Schirmer sought to secure and preserve uniformity of alignment in this way: The sheets of paper are specially prepared for use by perforating openings in the parallel margins "at uniform distances apart and in exact alignment with each other." These marginal openings are engaged by a series of pins extending radially from the peripheries of each of two circular plates rigidly mounted on the respective ends of the feed roller, the positions of the pins as to each other corresponding to the positions of the perforations, whereby the pins successively engage the corresponding perforations in each of the strips, thus advancing all the sheets a uniform distance as the feed roller is rotated. As the circumferences of the plates upon which the pins are mounted are respectively equal to the length of the bill, one complete revolution of the feed roll (effected by a manually operated crank) feeds a complete bill, at the expiration of which revolution the feed is automatically stopped. A so-called pressure roller, which during the feeding operation is kept out of engagement with the paper, is at the end of each feeding operation caused by a cam action to descend upon and rigidly clamp the strips of paper, permitting their manual tearing off against the sharp rear edge of the upper casing of the machine. The tearing-off device is that of the Shoup patent, No. 561,350, June 2, 1896, except that Shoup's pressure roller is the upper feed roller, and exerts pressure on the paper strips all the time. Schirmer's pressure roller is by the resumption of the feeding operation again automatically lifted out of engagement with the sheets, and so remains until the completion of that feeding movement. The claims in suit are as follows:

(1) "In a shipping bill register, two series of pins, a rotating body upon which each series of pins are mounted, means for rotating said body to cause the pins of each series to successively engage perforations uniformly arranged in sheets of paper placed one upon the other, a pressure roller adapted to engage said sheets at the termination of each feeding operation and to release said sheets at the beginning of each feeding operation, and means so controlling said pressure roller."

(2) "In a shipping bill register, two series of pins mounted upon a rotating body, means for rotating said body to cause the pins of each series to successively enter perforations in a plurality of sheets of paper arranged one above the other to uniformly feed said sheets, a cutting edge for severing said sheets, and a pressure roller adapted to rigidly engage said sheets at the termination of each feeding operation and to hold said sheets while they are being severed."

The only substantial respect in which the second claim differs from the first is that it expressly includes the element of a cutting edge. The elements of these claims, broadly stated, are, first, the feeding device; and, second, the device for facilitating the tearing off of the sheets.   Both validity and infringement are denied.

[1] Setting to one side for the moment the patents to Kirby, the methods of feeding the strips employed or disclosed by patents prior to Schirmer were either a manual drawing out of the sheets for a proper distance, the passing of the strips between upper and lower rotating feed rolls, or the use of mechanically actuated grippers which held the strips tightly until released to allow the strips to be cut off. The prior art generally (still passing by Kirby) had thus recognized it as necessary to preventing slipping of the strips and inaccurate registering that the strips be held tightly together during the entire feeding operation, as well as during the cutting-off process.

In our opinion the essence of the Schirmer invention is the adoption of a mechanism by which the gripping devices of the prior art are dispensed with and the sheets fed loosely by means of the engagement of the pins on the feed drum with the perforated openings previously prepared in the sheets; the pressure roll having no function except to hold the sheets rigidly against the plate during the operation of tearing off the used sheets, and the device thus resulting in correcting the effects of slipping, instead of preventing it.   We see no merit in the contention that the features referred to were not disclosed by the specification and claims.   In our opinion the specification sufficiently discloses a mechanism whereby an ungripped plurality of sheets is fed by the action alone of the pin roll mechanism, and sufficiently supports the theory now claimed of automatically maintaining alignment.   The lack of a gripping element (as a constantly operative pressure roll) is sufficiently suggested by the omission of disclosure thereof, in connection with the express statement in the specification that the pressure roller "engages the sheets of paper at the end of each complete rotation of the [feed] roller and holds said sheets firmly against the surface of the [feed] roller while said sheets are being severed at the front of the machine"; also the statement that it is necessary that the pressure roller "shall engage the sheets of paper only at the expiration of each feeding operation," and the further statement that the construction and location of the cam rings are

such as to permit the pressure roller "to descend against the sheets of paper at the end of each feeding operation and to rise therefrom upon each initial movement of said feed roll in order to not obstruct each feeding movement of the sheets of paper."

It was unnecessary to state that the pins fed the perforations loosely. The latter were described as previously prepared, spaced, and aligned, and as preferably round; and the presumption would be that they were large enough so that the pins would readily enter the three sheets at once, notwithstanding presumed inequality in texture and cut of the strips naturally affecting to some extent the perfect registering of the perforations in the different strips. Neither the fact that the pins are tapered, nor that the drawings show small perforations (the drawings being on different scales), persuade to the contrary. The engagement between pins and perforations could not well accurately be accomplished, so as alone to carry on the feeding operation and at the same time maintain constant alignment of all the sheets, unless the perforations were substantially larger than the pins. That it was not intended that the pins should puncture the paper either wholly or in part, but that the perforations should be large enough to permit the pins to readily enter, especially appears by the statement in the specification that the ends of the pins are "tapered to enable them to readily enter the perforations or openings in the edges of the sheets."

[2] We think the claims in suit, when read in connection with the specification, should be construed as claiming the invention of the patent as above defined, viz. the combination of the feeding device disclosed and the cutting-off mechanism described. Nor do we find anything in the Patent Office history which estops the patentee from claiming the benefit of the feeding device as an element of the combination of these claims. The fact that the patentee acquiesced in the rejection of claims 1 to 4, inclusive, as originally presented—which claims were confined entirely to the feeding mechanism—does not bar him from relying upon the claims now in issue, which are combination claims and include, not only the feeding mechanism, but the added element of the tearing-off mechanism. It is almost a commonplace that a new combination of elements, old in themselves, but which produce a new and useful result, amounts to invention. Expanded Metal Co. v. Bradford, 214 U. S. 366, 381, 29 Sup. Ct. 652, 53 L. Ed. 1034.

[3] Unless Kirby is to the contrary, the prior art indisputably contains no anticipating device—indeed, no device which anticipates even Schirmer's feeding mechanism. In our opinion Kirby does not anticipate the invention of the claims in suit. The Kirby patents are three, viz. Nos. 469,665 and 469,666, both issued February 23, 1892, and No. 545,342, issued July 23, 1895. Each of the three discloses a pin-feed mechanism. In the third patent the sheets of paper are not shown to be previously perforated; the sheets being pierced by the pins as the roller rotates in the feeding process. The first and second patents describe the strips as perforated near their edges or along their sides, and the teeth as engaging with the perforations. The drawings of both the first and second patents show what would seem to be longitudinal perforations, as distinguished from the round

openings of Schirmer. Such longitudinal openings would seem not to serve the full purpose of Schirmer's openings. Defendant has not persuasively shown a draftsman's practice of indicating round holes by lines or slits. Prior patents are part of the prior art only by what they disclose on their face. Munising Paper Co., Ltd., v. American Sulphite Pulp Co. (C. C. A. 6) 228 Fed. 700, 703, 143 C. C. A. 222, and cases there cited.

[4] There is, however, express testimony that Kirby's perforations were round, and that machines were constructed under the patents (or one of them) with round strip perforations and with a feeding mechanism substantially that of Schirmer. This testimony is sharply disputed, and defendant's testimony is not corroborated by the production of any machine so constructed or operated. In our opinion, defendants have not shown the alleged prior use by evidence of the high degree required therefor.

But it is enough to say that neither of the Kirby patents discloses the combination of the patent in suit, viz. Schirmer's feed and tearing-off mechanism combined. In the device of the first Kirby patent springs maintain a constant pressure upon the strips to prevent them "from freeing themselves" from the teeth "while being fed through the register," and apparently the same pressure is maintained during the tearing-off process. In the second patent pressure rolls seem to be constantly applied to the strips while fed over the pin wheels. But unless there is a pressure of the paper against the pins during the feeding operation, there would seem to be none during the cutting-off process. In the third patent the strips are fed between two rolls, one being the pin roll. None of the three shows a mechanism in which pressure is applied to the strips only while the feeding is suspended. The quotations already made from the Schirmer patent negative the suggestion that his pressure bar is intended during the feeding operation to keep the strips on the pins. It is difficult to see how the bar could keep the strips on the pins while exerting no pressure whatever on the paper, or, to borrow the language of the specification, if they "engage the sheets of paper only at the expiration of each feeding operation," and if the bar rises from the paper "upon each initial movement of said feed roll in order to not obstruct each feeding movement of the sheets of paper."

[5] We think the claims of the Schirmer patent in suit are not subject to the defense of mere aggregation. True, the cutting-off process does not occur simultaneously with the feeding process. It is enough that the two elements so coact that, as a consequence thereof, a new and useful result, and not a mere aggregation of several results follows. But both the feeding and tearing off are necessary to an effective register. Houser v. Starr (C. C. A. 6) 203 Fed. 264, 273, 121 C. C. A. 462; Krell Co. v. Story & Clark Co. (C. C. A. 7) 207 Fed. 946, 951, 125 C. C. A. 394; Sievert v. Mausoleum Co. (C. C. A. 6) 213 Fed. 225; Ohmer v. Ohmer, 238 Fed. 182, 190, 151 C. C. A. 258.

[6] We find nothing in any of the references, sought to be introduced upon the motion to reopen, which, if received, should have af-

fected the result. None of these references are in the register art. Several of them relate to the feeding of motion picture films in the process of printing. Some of them involve feeding more than one strip, and show that it was old in that art, even before Schirmer, to evenly feed a plurality of celluloid strips by means of perforations in the margin engaging pins mounted upon rollers. One at least of these patents states that, "were there any appreciable slipping at any tooth, the next tooth would tend to correct the error." Another reference relates to a vending machine, in which a perforated tape or paper, slotted to receive the article to be sold, is fed by means of pins (on a drum) which engage the perforations in the tape. Another involves a speedometer, in which a ribbon is carried by means of perforations therein engaging with points on a drum. But neither one of these references discloses the combination of the Schirmer patent or throws any appreciable light upon the question of invention in the Schirmer device.

In our opinion the claims of the Schirmer patent in suit involve invention. Assuming, for the purposes of the opinion, that Schirmer's feeding device involves no invention over Kirby, and thus that each element of the combination is old, it yet remains that the combination itself is new; and we think it clear that this combination marked a distinct advance in the register art, in that it accomplished a better result than had ever before been achieved, and in a distinctly new way. This is invention. Walker on Patents (5th Ed.) § 26, and numerous cases cited.

This conclusion of fact is supported, not only by the testimony of experts, but also by the fact that during a long period of years it had not occurred to those actively experimenting in an effort to produce an effective registering device to combine Schirmer's feed mechanism and his cutting-off mechanism, but also by the success of the Schirmer invention and its favorable reception by the buying and using public.

[7] In our opinion, also, the defendant must be held to infringe. Its feeding device is substantially that of Schirmer. Pressure is applied to the strips only during the cutting-off operation and while the feeding is suspended. Instead, however, of employing the cutting-off device adopted by Schirmer, defendant employs the device shown in the patent to Begg, No. 467,393, January 19, 1892. Begg's device differs from Shoup's device before explained in this: It consists of a pivoted flat bar with a cutting edge, which is out of engagement with the sheets until the tearing-off operation. When the sheets are, by the hand of the operator, pulled upwardly and against the cutting edge of the bar, the latter is tilted, and the opposite edge thereby automatically presses upon and holds the strips firmly while they are being so severed. We think, under the reasonable range of equivalents to which Schirmer's invention entitles him, defendant's cutting-off device must be considered the mechanical equivalent of Schirmer's. Plaintiff is not limited to the specific form shown in the patent. Schiebel Co. v. Clark (C. C. A. 6) 217 Fed. 760, 768, 133 C. C. A. 490.

[8] True, Schirmer's so-called pressure roll (in some respects a

misnomer) automatically engages the strips to be torn off, while defendant's plate is brought into such engagement by the manual lifting of the strips; but the question of mechanical equivalency goes farther and must be determined by comparison of the entire operation in each case. In each the strips are torn off by hand; the differences are merely that in Schirmer the strips are clamped before the tearing operation begins, and the rear edge of the top of the machine is the cutting plate, while in defendant's machine the act of manually lifting the strips for the cutting-off operation mechanically raises the plate, thereby clamping the strips, which are then torn by the opposite cutting edge of the plate. While a mere manual operation is not the equivalent of a mechanical operation (Brown v. Davis, 116 U. S. 237, 249, 6 Sup. Ct. 379, 29 L. Ed. 659), in our opinion this rule as applied to the methods in question here does not defeat equivalency. In each of the two methods the same result is accomplished in substantially the same way and by substantially the same means. Both devices were old, were borrowed from the same art, where they were used for the same purpose, and may fairly be considered interchangeable. The fact that the Begg patent had expired when defendant adopted its device is not important.

It follows, from these views, that the decree of the District Court, finding the claims in suit valid and infringed, should be affirmed. In view of the conclusion already announced, that the new references which formed the subject of the motion to reopen contain nothing which should change the result theretofore reached below, and the ground of the refusal to reopen not appearing, the order of denial is affirmed.

Appellee will recover its costs of this court in each appeal.