## EGRY REGISTER CO. v. STANDARD REGISTER CO.

Circuit Court of Appeals, Sixth Circuit.
January 6, 1928.

No. 4762.

1. Patents ⟺318(4)—Court could not assume on accounting that all defendant's sales of infringing article were due to presence of patented features.

It could not be assumed, on accounting for profits from infringing device, that all defendant's sales of shipping bill register having plaintiff's patented improvement were due to presence of patented features, and that all profits were caused thereby.

2. Patents ⟺318(4)—Where invention infringed pertained to one portion of construction and operation of article sold, apportionment of profits on accounting was necessary.

Where actual invention infringed pertained to only one portion of construction and one feature of operation of shipping bill register sold by defendant, an apportionment of profits on accounting was necessary for infringement.

3. Patents ⟺318(4)—Patentee cannot by language of claim transform invention of improvement in existing structure into one of complete structure, entitling him to profits on whole structure.

Patentee cannot by language of his claim transform his invention of an improvement in an existing structure into one of complete structure, as if it were wholly new, so as to entitle him to profits on those parts of it which are not in any fair sense his invention.

4. Patents ⟺318(4)—Burden was on plaintiff to show apportionment of profits from sale of infringing article.

An apportionment of profits from sale of infringing article being necessary, burden was on plaintiff to make apportionment, or show sufficient excuse for not doing so.

5. Patents ⟺318(4)—Plaintiff suffering injury from infringement, not being entitled to all profits, and not being able to make apportionment, was entitled to reasonable royalty.

Plaintiff, having suffered injury because of defendant's infringement of patent for improvements on shipping bill register, and not having been able to make satisfactory proof of damages, not being entitled to all defendant's profits from sale of register having such improvement, and not being able to make an intelligent apportionment, was entitled to award of reasonable royalty.

6. Patents ⬤═318(5)—Where patent infringement period was about 18 months, plaintiff was entitled to interest at 6 per cent. on royalty from end of period until decree.

Where whole period during which patent was infringed was about 18 months, it was sufficient to allow, as damages for nonpayment of reasonable royalty, interest at 6 per cent. from end of period until decree.

7. Patents ⬤═259(2)—Making and supplying to infringing machine articles necessary to infringing use, is "contributory infringement" for profits of which makers must account.

Making and supplying to an infringing machine articles which are necessary to infringing use, and have no other possible use, and would have no sale value, excepting to these infringers for that use, is "contributory infringement," for profits of which makers must account.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contributory Infringement.]

8. Patents ⬤═318(3)—In fixing reasonable royalty for infringement, question is what parties would have agreed on, if both were reasonably trying to reach an agreement.

In fixing a reasonable royalty for infringement of patent, primary inquiry is what parties would have agreed on, if both were reasonably trying to reach an agreement, and when result is to interfere with patent monopoly, which patentee was in position to and desired to keep by retaining entire market himself, his compensation for parting against his will with that opportunity must take due account of loss to him of anticipated profits on business which licensees will thus get away from him.

9. Patents ⬤═318(3)—Future profits from sale of supplies for patented machine may be considered, in retroactively determining reasonable royalty.

When patentee's business scheme involves reasonable expectation of making future profits by continuing sale to purchaser of patented machine, of supplies to be furnished by patentee, which future business he will lose by licensing a competitor to make machine, this expectant loss is an element to be considered in retroactively determining reasonable royalty.

10. Patents ⬤═319(3)—Infringement of patent No. 940,481 for shipping bill register improvement held not willful, justifying statutory increase of damages (35 USCA § 70).

Infringement of patent No. 940,481 for improvement in shipping bill register *held* not willful, in such sense as to justify increase of damages, under Act Feb. 18, 1922, § 8 (35 USCA § 70).

Appeal from the District Court of the United States for the Southern District of Ohio; Smith Hickenlooper, Judge.

Suit by the Standard Register Company against the Egry Register Company. From a decree for plaintiff, defendant appeals. Reversed and remanded.

H. A. Toulmin, Jr., of Dayton, Ohio (H. A. Toulmin, of Dayton, Ohio, on the brief), for appellant.

Alfred M. Allen, of Cincinnati, Ohio (Allen & Allen, of Cincinnati, Ohio, E. H. & W. B. Turner, of Dayton, Ohio, and Marston Allen, of Cincinnati, Ohio, on the brief), for appellee.

Before DENISON and MACK, Circuit Judges, and DAWSON, District Judge.

DENISON, Circuit Judge. In 267 F. 186, this court affirmed the decree which had found the validity of the Schirmer patent, No. 940,481, belonging to the Standard Company, and the infringement of claims 1 and 2 by the Egry Company. There were thereafter a reference to a master for the usual accounting, and long proceedings before the master. His final report found, among other things, that defendant's profits by the direct infringement were about $9,000, and that defendant, by selling supplies for the infringing machines which it had put out, was guilty of continuing contributory infringement, its profits from which were about $29,000. There was a final decree for these two amounts and interest, from which decree this appeal is taken.

Appellant contends that the award of defendant's entire profits upon the original sales of the infringing machine is erroneous, because there should have been an apportionment of profits; and this presents the first question. The defendant's device, which forms the basis of the award, is called an autographic register. It contemplates that the salesman or the shipping clerk will enter the proper details upon the blanks in a printed form, under which is carbon paper, which makes a duplicate record upon a registering blank form, and that the two will then be detached from the strips of paper of which they have been parts, and will be appropriately used. The device consists of what is substantially a rectangular metal box, perhaps 5 inches high and 15 long and 10 wide. In one end of the box are mounted two transverse shafts, which carry respectively two continuous rolls of the printed strip forms. Opposite the central part of the box is a longitudinal shaft, which carries a continuous strip of carbon paper. These printed strips are so led around idling rollers that the two strips, superposed, and the intervening carbon, pass together over a central portion of the top of the box, which becomes a writing bed or table while the blank is being filled out. The two strips are then passed

on under a transversely pivoted guide, the front edge of which becomes a cutting edge, and the rear edge of which swings down and binds the strips firmly, when the used forms are turned up against it and torn off.

This general construction was older than the Schirmer patent. The forward simultaneous feeding of the strips had been accomplished through a pressure roll, manually revolved. For this pressure roll Schirmer substituted a roller underneath the paper, carrying at each end a spur wheel, the spurs or pins of which passed up through a row of holes through the strips near each edge, and thus when the spur wheels were revolved the strips of paper were pulled along. He also provided a cut-off bar, which alternately released and gripped the strips moving under it. There was nothing generally new, even in this construction, but Schirmer's invention consisted in having his spur pins or teeth distinctly smaller than the holes, whereby they would pass through both these holes in spite of imperfect registration and rest loosely therein, and whereby the jogging motion of the pins in the holes would adjust or take up any little tightness in one strip, or looseness in another, and thereby compel a perfect registration. This arrangement also insured that the blank would be accurately positioned for presentation to the cut-off edge. There were patentable merit and substantial commercial value in Schirmer's improvement; but, although the precise combination was new, yet it was and continued to be what he called it, an improvement in registers of this class, and consisted in adding to the general structure "accurate means for feeding two or more sheets * * * so that the writing lines of said sheets will at all times be in alignment." Defendant's infringing device differed from competing devices on the market, or other devices manufactured by it, only in the peculiar relation of the pin wheels to the perforated strips, in connection with the gripping and releasing of the cut-off bar.

[1, 2] There is no finding and there is no evidence that the sales made by defendant were particularly due to its incorporation in its device of the patented combination; doubtless, as in every such case, the patented improvement contributed to many of the sales and was the moving cause in some of them; but defendant was also selling analogous noninfringing devices to meet the same general demand. It cannot be assumed that all defendant's sales were due to the presence of the patented features, and hence that all the profits were caused thereby. That

feature aside, it is plain that, in the ordinary sense, not all of defendant's profits were due to the use of the patent. If a supporting framework and ornamentation in a defendant's device constitute the only features which are not the substance of the patented improvement, they may well be disregarded; but here the actual invention pertained to only one portion of the construction and one feature of the operation, and we are satisfied that an apportionment of profits was necessary. The case is fairly parallel to the grain seeder case considered by the Supreme Court in Dowagiac Co. v. Minnesota Co., 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398. In the present case, the single ultimate object is to produce a satisfactory duplicate record; in that case, the substantial object was to plant the grain efficiently. The assembled device in that case provided for the three operations of preparing the ground, dropping the seed and covering it. The present device provides for storing and assembling the strips, moving and holding them in proper relation to the writing table, and then severing them. The inventive thought has to do with only one of these steps, moving the strips along properly in unison, or possibly with two of them, the travel and the severance. The Supreme Court found that in the grain seeder the evidence was clear that the profits were due in substantial degree to other important features (page 646 [35 S. Ct. 222]) and hence that there must be apportionment; and it is equally clear upon this record. True, the device would not have been operative without some strip-feeding means; no more would the grain seeder work without some covering shoe.

[3] We have several times had occasion to say[1] that the important matter in this connection was the actual invention as compared with the prior art, rather than the terms in which the claim may be formulated. Schirmer apparently might have had a claim for his pin wheel and paper strip combination in any suitable association, or he might have made it include also the mechanism for severance, as he did, or the means for storing the paper and its preliminary assembling and feeding; he might even have included the supporting framework. He cannot, by the language which his claim happens to take, transform his invention of an improvement in an existing structure into one of a complete structure, as if it were wholly new, so as to entitle him to profits upon these

---

[1] Dunn v. Standard, etc., Co., 204 F. 617, 619; Herman v. Youngstown, etc., Co., 216 F. 604, 606, 609.

parts of it which are not in any fair sense his invention.

The course of decisions on this subject may well be noticed. In Brennan v. Dowagiac (C. C. A.) 162 F. 472, this court considered the matter of profits arising from infringement of the Hoyt patent by making the McSherry and similar grain drills. It seems to have been the distinct principles of decision of the opinion that the plaintiff was entitled to recover all the profits which the defendant earned by the sale of an infringing article containing additional and unpatented features, unless the article was a salable entity when the patented features were stripped from it, and (probably) unless also the additional features embodied were themselves the subject of a valid patent belonging to some one else. It was then further held that, with reference to the situation presented by the relation of the Hoyt patent to a complete grain drill, the infringing manufacturer who was not able to show his profits on the patented invention separately from those on the rest of the machine, must pay them all. In the Westinghouse Case, 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, principles were announced applicable to an electrical transformer infringing upon an earlier patent therefor. It would seem that the defendant's entire device was bodily the plaintiff's patented device, nothing less and nothing more, excepting that defendant had shifted some of the parts, thereby creating differently located intervening spaces, and claimed that these new spaces were important and functional additions to the patented combination. What is said in the opinion regarding the duty of the defendant to account for all profits, is said with reference to that situation; and it is not necessarily applicable to a case where the patented combination constitutes only a part of a marketable machine, or to cases where the defendant's structure includes useful physical additions.

In Dowagiac Co. v. Minn. Co., supra, the Supreme Court had to consider profits resulting from an infringement of the same Hoyt patent involved in our Brennan Case. The infringement was apparently the same as that involved in the McSherry structures—the machines sold by the defendants in the Minnesota Case having been made by the manufacturers, who were the defendants in the Sixth Circuit cases. It is therefore difficult to conceive any substantial reason for any difference as to the necessity or form of apportionment, as between the two groups of cases. The Supreme Court distinctly held that apportionment was necessary and that the burden was upon the plaintiff to make it, or to show it to be impossible. In the Westinghouse Case, this burden upon plaintiff (if it there existed) was held to be discharged by showing that the defendant had so mingled the patented and the unpatented that apportionment was impossible. It might seem that apportionment was equally impossible in the Dowagiac Case; but the Supreme Court said that it did not so appear, and hence the plaintiff had failed. While it is in many cases impossible to apportion profits accurately by any logical means, it may often happen that there is some satisfactory criterion of added value caused by the patented improvement and leading to the inference of added profits resulting therefrom. The comparison between selling prices of articles, with and without the improvement, may furnish this criterion (see Clark v. Schieble, etc., Co. [C. C. A.] 248 F. 276, 283); expert evidence might sometimes furnish it upon some theory. It may well be some method of this kind which the Supreme Court intends to specify by its reference in the Dowagiac Case, to the lack of any real obstacle to a fair apportionment. However that may be, it seems clear that the Brennan Case, as to the two principles of decision above stated, is necessarily much impaired if not overruled by the Dowagiac Case.

Another consideration, not without importance, bearing perhaps on the propriety or perhaps on the difficulty of apportionment (or both) is this: The granted monopoly infringed upon is restricted by the grant to a combination of two elements: (1) The forward feeding means including the spur pins for the registering holes; and (2) the severing means, including a device alternately rising to release the strips for forwarding and falling to grip them for severing. Before the first hearing in the court below, defendant eliminated from its register all means for the alternate grip and release, and substituted a rigid and stationary cut-off bar. Its modified device did not infringe, but was sold at the same price, and the volume of sales did not drop; on the contrary, the volume increased at least normally from year to year; and the proof is clear that the direct profit was greater on the modified than on the infringing form, because the cost was less. While contingencies of greater profit, if the first form had been continued, are not foreclosed, yet upon the record it appears that defendant by infringing, instead of by taking an alternative course then open to it (though not then developed), made losses,

not profits, and this result must, at least, challenge critical study of any theory of profit recovery which makes it possible.'

[4] An apportionment being necessary, the burden is upon the plaintiff to make it, or show a sufficient excuse for not doing so, and obviously, under the facts of this case, a substantially accurate apportionment would be a physical and mathematical impossibility; but there was no effort by plaintiff to utilize expert testimony for this purpose. There are cases, like Herman v. Youngstown, etc., Co. (C. C. A.) 216 F. 604, 608. where the record shows some apparent means of approximate apportionment, which, though arbitrary, is still reasonable; but here there is no basis which has been suggested, save the relative costs of the material and labor in different parts of the structure. If this might ever bear any due relation to such an apportionment of profits as is now involved, we can see no such relation in this case; and we must hold that this record shows no reasonable basis of apportionment.

We do not understand the Westinghouse Case as holding that, in every case where the profits cannot be apportioned, defendant must pay them all. What is there said refers, we think, to a case where apportionment is impossible because the device or structure sold by defendant is the entire patented thing, nothing more and nothing less. That seems to have been true with the case and converter there claimed. We have pointed out that it is not true with this register. Defendant may well be penalized with the entire profits, when his failure to keep apportionment records which might have been kept is at the base of the confusion; not so, we think, when no possible keeping of records by defendant would have minimized the uncertainty.

[5] The plaintiff having suffered a plain injury, and not having been able to make satisfactory proof of damages, and not being entitled to all the defendant's profits, and not being able to make an intelligent apportionment, we find here a clear instance of that class of cases discussed in U. S. v. Frumentum Co. v. Lauhoff (C. C. A.) 216 F. 610, 615, where the award of a reasonable royalty is the only solution of the difficulty. This has been sanctioned by the Supreme Court, and we have several times applied it. Dowagiac v. Minnesota, supra; K. W. Co. v. Temco, 283 F. 873, 878; Fox v. Underwood, 287 F. 453, 454; Gear Co. v. Studebaker Co., 4 F. (2d) 510; National Tube Co. v. Mark, 10 F. (2d) 430, 432. Much of the doubt formerly existing as to when a case was fit for

the application of this measure of damages is removed by the Act of February 18, 1922, § 8, embodied in U. S. Code, tit. 35, § 70; but, if this statute were applicable to this accounting, pending since 1918 (as it is not), it would only confirm the result we have independently reached.

We therefore hold that upon the present record the entire profits should not have been awarded; that the plaintiff had full and sufficient opportunity to show, if it could, an applicable criterion for apportioning the profits; that justice does not require that plaintiff should be given a further opportunity therefor, nor permit that all relief should be denied; and hence that the case should go back for a further hearing, with or without a further reference, to determine plaintiff's damages upon the basis of a reasonable royalty. We would make every effort to find in the existing record a sufficient basis for the making of such an award by this court, so as to end the litigation, as we did in K. W. Co. v. Temco, supra; but we cannot be satisfied to do so here. The determinative elements have not been developed.

[6] It is part of the theory of damages upon the basis of reasonable royalty that the amounts would have been paid at customary intervals, and we have, under some circumstances, thought proper to allow interest from the end of each calendar year. In this case the whole infringement period was about 18 months, and it will be sufficient to allow, as damages for nonpayment, interest at 6 per cent. from the end of that period until the decree. See K. W. Co. v. Temco, supra, at page 380; National Co. v. Mark, supra, at page 453.

[7] The question of defendant's liability for profits made upon the supplies furnished by defendant to the purchasers of its infringing machines, presents substantial difficulties, which we need not consider. It is settled that making and supplying to an infringing machine articles which are necessary to the infringing use, and which have no other possible use, and would have no sale value excepting to these infringers for that use, is contributory infringement, for the profits of which the makers must account. See Union Co. v. Curry (C. C. A. 6) 279 F. 465, 468; Lyman v. Bassick (C. C. A.) 18 F. [2d], 29, 38. When the articles sold have valuable and innocent use and may be thought of as articles of general merchandise, it is not so clear that the makers must respond as for contributory infringement, merely because they know that the purchasers intend to use the articles in the course

of infringing operations; but in this case we need not consider whether the facts present this latter question, nor what the answer would be.

To adopt a reasonable royalty as the measure of damages is to adopt and interpret, as well as may be, the fiction that a license was to be granted at the time of beginning the infringement, and then to determine what the license price should have been. In effect, the court assumes the existence ab initio of, and declares the equitable terms of, a supposititious license, and does this nunc pro tunc; it creates and applies retrospectively a compulsory license. When once this basis of recovery is adopted, the whole structure of subsequent contributory infringement falls, because the theory that the users of the devices were infringing the patent has been rejected and the theory of a lawful and noninfringing use flowing from a license has been substituted. Upon this point, we have not had the benefit of argument by counsel, but it seems to us entirely plain.

[8, 9] In fixing a reasonable royalty, the primary inquiry, often complicated by secondary ones, is what the parties would have agreed upon, if both were reasonably trying to reach an agreement. This must be modified by the commercial situation, and when the result is to interfere with a patent monopoly, which the patentee was in position to and desired to keep, by retaining the entire market himself, his compensation for parting against his will with that opportunity must take due account of the loss to him of anticipated profits on the business which the licensees will thus get away from him. It is a step further, and we think a necessary one, to say that, when the patentee's business scheme involves a reasonable expectation of making future profits by the continuing sale to the purchaser of the patented machine, of supplies to be furnished by the patentee, which future business he will lose by licensing a competitor to make the machine, this expectant loss is an element to be considered in retroactively determining a reasonable royalty; and this is so even though the expectation of such future business was not the result of any system of contract obligations, but was only expectation reasonably based on established business methods and customs. This retroactive determination of the value, 10 years ago, of a thing which then had no market value, is not easy; but it presents no greater difficulties than are met, fairly well, by courts and juries in other fields of litigation. We now know that what happened during a past period was, at its beginning, something which might happen, and not infrequently what is now the past is helpful in forming, now for then, an earlier judgment of what was then the future. Of course, this is not to say that a later developed form, which demonstrated that the entirety of the patented combination was not so relatively desirable as it was then thought to be, can be dated back and used as a standard of comparison affecting the earlier supposed valuation.

[10] We should add, in view of what is to be the further course of the litigation, that we find no basis for any conclusion that the infringement was willful in any such sense as to justify the statutory increase of damages. U. S. C. tit. 35, § 70. Both as to validity and infringement there was doubt sufficient to support the good faith of a belief that defendant was right. The strenuous and persistent defense, which is attacked by plaintiff as overlitigious, has led to the award against defendant of a large sum as costs, and we see neither reason nor opportunity to go further in penalizing the defense. There is no appeal on this point, and the costs in the court below up to this time are not to be disturbed.

The decree is reversed, with costs of this court, and the case is remanded for the entry of a new decree in accordance with this opinion.