## AUTOGRAPHIC REGISTER CO. v. STURGIS REGISTER CO. et al.

## STURGIS REGISTER CO. et al. v. AUTOGRAPHIC REGISTER CO.
### Nos. 8153, 8154.

Circuit Court of Appeals, Sixth Circuit.
March 15, 1940.

Thomas J. Byrne, of New York City (Thomas J. Byrne, of New York City, and Frank E. Liverance, Jr., of Grand Rapids,

884

Mich., on the brief), for Autographic Register Co., appellant and cross-appellee.

. Otis A. Earl, of Kalamazoo, Mich. (Earl & Chappell and Otis A. Earl, all of Kalamazoo, Mich., on the brief), for Sturgis Register Co. and another, appellees and cross-appellants.

Before HICKS, ALLEN, and ARANT, Circuit Judges.

ALLEN, Circuit Judge.

This appeal and cross-appeal arise out of a bill for infringement of Shoup & Oliver Patent, 1,396,070, for paper feed device for autographic register. Various claims of the patent were held valid and infringed, both in the District Court and in this court. Sturgis Register Co. v. Autographic Register Co., 6 Cir., 73 F.2d 883. An accounting was had as ordered, and the District Court in the main confirmed the master's report, sustaining exceptions thereto with reference to minor items. From the final decree these appeals are prosecuted.

The Autographic Register Company will be referred to as plaintiff, and the Sturgis Register Company and National Carbon Coated Paper Company will be designated as defendants throughout this opinion.

The autographic register is used in mercantile establishments for making duplicate or triplicate records of sales upon strips of paper. Perfect alignment of the strips was effected by the Shoup-Oliver device with consequent exact registration so that multiple copies of originals could be made at one writing. The paper strips fed into the machine are specially cut to fit into the feed mechanism. The register is sold at little or no profit, the profit in the trade being made from the sale of the slips or supplies for use in the register. These supplies are not patented.

The principal legal question presented is whether the District Court erred in not requiring an accounting for defendants' profits and plaintiff's damages in the sale of these unpatented supplies for use on infringing machines.

Plaintiff urges that the supplies should be considered in the computation of damages and in support of its contention relies upon Egry Register Co. v. Standard Register Co., 6 Cir., 23 F.2d 438, and Union Electric Welding Co. v. Curry, 6 Cir., 279 F. 465. In the former case this court said [23 F.2d 442]: "It is settled that making and supplying to an infringing machine articles which are necessary to the infring-

ing use, and which have no other possible use, and would have no sale value excepting to these infringers for that use, is contributory infringement, for the profits of which the makers must account."

The Egry case does not support plaintiff's contention, for the court declared, 23 F.2d at page 443, that since a reasonable royalty had been determined ab initio, "the whole structure of subsequent contributory infringement falls," and therefore decided that it need not consider the question of defendant's liability for profits from sale of the supplies.

In Union Electric Welding Co. v. Curry, supra, the record presented a situation involving sales of a tool used to tie bags of cement. The owners of the patent upon the tool did not sell the tool at a profit, but placed it with those who used bags in great quantities, such as cement manufacturers, and derived their profit from the business of making wire ties suitable for use with the tool. The ties were of no use except in the patented machine and the machine could not be operated except with the ties, which were unpatented. The ties were sold directly to the users of the infringing machine. The court held that the furnishing of the unpatented facilities for use with the patented device constituted contributory infringement. This case apparently is squarely in favor of the appellant's contention unless it is differentiated by the fact that the ties were not perishable or consumable goods. We think the District Court correctly ruled against the appellant's contention that the sale of the supplies should be considered in the computation of damages for two reasons: (1) That the selling of these perishable and consumable goods did not under the earlier decisions constitute contributory infringement, and (2) that the appellant, under the recent decisions of the Supreme Court, is not permitted to extend the monopoly of the patent so as to include the unpatented supplies used in connection with the patented device.

The paper used in the register was not a part permanently incorporated in the infringing device with knowledge of the tortious use, as was the case in Motor Wheel Corp. v. Rubsam Corp., 6 Cir., 92 F.2d 129; nor was it in any sense used for construction or reconstruction of the patented device. Cf. Automotive Parts Co. v. Wisconsin Axle Co., 6 Cir., 81 F.2d 125; Timken-Detroit Axle Co. v. Automotive Parts Co., 6 Cir., 93 F.2d 76. While the supplies

are intended to be used in the patented or infringing device, and have no other use, they are in no sense a part of the mechanism. In fact they fall precisely within the definition laid down in Morgan Envelope Co. v. Albany Paper Co., 152 U.S. 425, 433, 14 S.Ct. 627, 630, 38 L.Ed. 500. The Supreme Court there said: "There are doubtless many cases to the effect that the manufacture and sale of a single element of a combination, with intent that it shall be united to the other elements, and so complete the combination, is an infringement. Saxe v. Hammond, Fed.Cas.No.12,411, Holmes, 456; Wallace v. Holmes, Fed.Cas. No.17,100, 9 Blatchf. 65; Barnes v. Straus, Fed.Cas.No.1,022, 9 Blatchf. 553; Schneider v. Pountney [C.C.], 21 F. 399. But we think these cases have no application to one where the element made by the alleged infringer is an article of manufacture perishable in its nature, which it is the object of the mechanism to deliver, and which must be renewed periodically, whenever the device is put to use."

The same principle was re-enunciated in Carbice Corp. of America v. American Patents Development Corp., 283 U.S. 27, at page 34, 51 S.Ct. 334, 75 L.Ed. 819. The court in that case pointed out the distinction between ordinary cases of contributory infringement where a part was incorporated in the mechanism with the intent to infringe, and the sale of an unpatented consumable product with knowledge that it is to be used in a transportation package which is charged to infringe a patent. In that case the tortious element of use in a wrongful device was alleged just as in the instant case, but the court held, 283 U.S. at page 30, 51 S.Ct. at page 334, 75 L.Ed. 819, that even if the transportation package of the appellee was a patentable invention, and the unpatented product was used with a similar transportation package, no relief could be granted. The recent decisions of the Supreme Court upon this particular question have emphasized the fact that the owner of a patent has no redress for the furnishing by another of unpatented, consumable facilities or products even for use with the patented or infringing device. In Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 37 S.Ct. 416, 419, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann. Cas.1918A, 959, which overruled Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 6 Cir., 77 F. 288, 35 L.R.A. 728, and Henry v. A. B. Dick Co., 224 U. S. 1, 32 S.Ct. 364, 56 L.Ed. 645, Ann.Cas.

1913D, 880, the Supreme Court, in commenting upon the principle that the patentee can claim no monopoly beyond that which he had invented and described in the claims of his patent, says: "Plainly, this language of the statute and the established rules to which we have referred restrict the patent granted on a machine, such as we have in this case, to the mechanism described in the patent as necessary to produce the described results. It is not concerned with and has nothing to do with the materials with which or on which the machine operates. The grant is of the exclusive right to use the mechanism to produce the result with any appropriate material, and the materials with which the machine is operated are no part of the patented machine or of the combination which produces the patented result."

The plaintiffs privilege does not cover the unpatented strips. The fact that the profit is made by the sale of the supplies is immaterial. Upon this point, in the Motion Picture Patents Co. case, the Supreme Court said: "This fact, if it be a fact, instead of commending, is the clearest possible condemnation of, the practice adopted, for it proves that, under color of its patent, the owner intends to and does derive its profit, not from the invention on which the law gives it a monopoly, but from the unpatented supplies with which it is used, and which are wholly without the scope of the patent monopoly, thus in effect extending the power to the owner of the patent to fix the price to the public of the unpatented supplies as effectively as he may fix the price on the patented machine."

The holding in the Motion Picture Patents Co. case is amplified by the holdings in the Carbice Corp. case, supra, and Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371, and compels affirmance of the District Court upon this point. In the latter case, the court held that the patent did not confer upon the Barber Company the right to be free from competition in supplying unpatented material to be used in practicing the patented method. We see no essential distinction between that case and this, and the District Court must be affirmed upon this feature of the case.

The District Court decreed that the plaintiff should recover $36,900.45, with interest from the date of the master's report, July 10, 1937, based upon the accounting and report of the master. The plaintiff

claims that this allowance is grossly inadequate. We think that the District Court must be affirmed.

The infringing registers were made at first by the defendant, Sturgis Register Company, later called Sturgis, which was absorbed in 1928 by the defendant, National Carbon Coated Paper Company, later called National, which continued the infringement.

The years covered by the accounting fall into three divisions. In the first, from March, 1925, to February, 1928, 3,784 infringing registers of the Exhibit 5 type were made and sold by defendant Sturgis, but there is no proof nor report of the cost of manufacture nor of profits. In the second, from early in 1928, when defendant National acquired control of Sturgis, until December 31, 1930, 1,496 registers of Exhibit 5 type were made and sold, and 3,394 registers of Exhibit 6 type were purchased and sold, upon which profits are shown to have been made. In the third, from January 1, 1931, to February 1, 1935, 2,952 registers of Exhibit 6 type were purchased and sold by defendant National, all at a loss. For the two periods in which no profit was established, the master found, and the record supports the finding, that the license agreements entered into by the plaintiff lacked uniformity and were, in two instances, in settlement of infringement litigation, and did not constitute evidence of an established royalty. He therefore awarded a reasonable royalty which he determined to be ten per cent of the price secured by the defendants from the sale of the register to jobbers. The fact that this is only five per cent of the list price does not alter the fact that it is ten per cent of the amount estimated to have been received by the defendants on the sales. The finding that this amount constituted a reasonable royalty was confirmed by the District Court, and we find no error in this conclusion.

Plaintiff also attacks the allowance calculated from the sale of 3,784 registers manufactured between 1925 and 1928, urging that the court adopt for this period an estimated profit which would allow plaintiff a recovery of $25,163.60 instead of $6,622, arrived at under the reasonable royalty basis for this item. Plaintiff bases its estimate upon the manufacturing costs and selling prices of National during the second period, for which accurate figures are presented, claiming that these costs and sell-ing prices should be applied to determine the profits of Sturgis in the first period. We think that the master's use of the reasonable royalty basis for the period between 1925 and 1928 does not constitute reversible error. The fact that another infringer, namely, National, made certain profits during a subsequent period does not constitute proof that Sturgis made the same profits during a different period. Although the defendants did not refuse to submit their records for examination by the plaintiff for the period under consideration, the plaintiff did not establish specific damages or profits by proof. In the absence of such proof, the master did not err in applying the reasonable royalty rule.

Nor did the District Court err in dividing the costs between the parties. This was a matter peculiarly within the discretion of the court, and we do not find that abuse of discretion existed.

The contentions raised by the defendants in their cross-appeal are also overruled. The court was not required to treat the infringing years as one continuous transaction and to deduct losses of subsequent years from profits of earlier years in order that the defendants might receive the advantage. As stated in Duplate Corp. v. Triplex Safety Glass Co., 298 U.S. 448, 56 S.Ct. 792, 796, 80 L.Ed. 1274: "Sales of the infringing product were not made at a level price. At times the price was high; at others it was low. The owner of the patent, in holding the infringers to an accounting, is not confined to all or nothing. There may be an acceptance of transactions resulting in a gain with a rejection of transactions resulting in a loss. Upon a statement of an account, a patentee is not looked upon as a 'quasi-partner of the infringers,' under a duty to contribute to the cost of the infringing business as a whole. McKee Glass Co. v. H. C. Fry Glass Co. [3 Cir.], 248 F. 125, 128. He is the victim of a tort, free at his own election to adopt what will help and discard what will harm."

There was no error in not deducting inventory of registers on hand at the end of the infringing period for the purpose of calculating profit. The registers remaining in inventory had not been sold and hence they did not enter into the accounting for the infringing period.

Since the defendants, who kept the records, purchased the material, and sold

the registers, were not able to show what part of the profits on the sale of the registers was attributed to the Shoup & Oliver Patent and what part to seven other patents which they claim are embodied in the infringing register, the District Court did not err in failing to apportion the profits resulting from the infringing and non-infringing elements. Cf. Westinghouse Electric & Mfg. Co. v. Wagner Electric & Mfg. Co., 225 U.S. 604, 618, 32 S.Ct. 691, 56 L. Ed. 1222, 41 L.R.A.,N.S., 653.

Other contentions have been considered, but we find no merit in them.

The decree is affirmed.

been claimed in return because the amount thereof had not been actually charged off, recovery back of income tax was properly denied to extent that claim was based on the notes. Revenue Act 1928, § 23(f, j), 26 U.S.C.A.Int.Rev.Acts.