## GRAND RAPIDS REFRIGERATOR CO. v. STEVENS et al.

Circuit Court of Appeals, Sixth Circuit.
June 30, 1928.

No. 4971.

1. Patents ⬳328—No. 970,672, for refrigerator shelf support, held invalid for want of invention.

Whittier patent, No. 970,672, claims 7, 8, for refrigerator shelf support, *held* invalid for want of invention.

2. Patents ⬳27(1)—Discovery of new uses or functions of device well known in mechanical or structural arts is not patentable invention.

Discovery of new uses for, or newly observed functions of, device well known in the mechanical or structural arts, is not patentable invention.

3. Patents ⬳168(3)—Patentee, canceling claims for refrigerator lining alone and inserting provisions for attachment in definite manner, is estopped to seek construction of claims allowed as full equivalent of claims canceled.

Patentee, canceling his claims for refrigerator lining alone and inserting provisions for attachment thereof in definite manner, is estopped from seeking such benefit of construction of claims allowed as would make them full equivalent of claims canceled; doctrine of range of equivalents being inapplicable to case of voluntary limitation by patentee or estoppel by Patent Office proceedings.

4. Patents ⬳328—No. 1,147,288, for enameled or porcelain-coated refrigerator linings, attached in definite manner, held not infringed.

Whittier patent, No. 1,147,288, claims 1, 2, 4, for enameled or porcelain-coated refrigerator linings, attached in definite manner, *held* not. infringed.

Appeal from the District Court of the United States for the Eastern District of Michigan; Charles C. Simons, Judge.

Suit by the Grand Rapids Refrigerator Company against Philip Ellis Stevens and another, as executors of the estate of Isaac Frank Stevens, deceased. From a decree of dismissal, complainant appeals. Affirmed.

William J. Belknap, of Detroit, Mich. (Frank E. Liverance, Jr., of Grand Rapids, Mich., and J. King Harness, of Detroit, Mich., on the brief), for appellant.

Nathan Heard, of Boston, Mass. (Frederick A. Tennant, of Boston, Mass., and Edward N. Pagelsen, of Detroit, Mich., on the brief), for appellees.

Before DENISON and MOORMAN, Circuit Judges, and HICKENLOOPER, District Judge.

HICKENLOOPER, District Judge. Complainant below appeals from a decree of the District Court dismissing the bill of complaint in an action for alleged infringement of two patents issued to W. H. Whittier—No. 970,672, September 20, 1910; and No. 1,147,288, July 20, 1915.

[1, 2] Claims 7 and 8 of patent No. 970,672 (quoted in the margin [1]) pertain directly to a specified form of shelf support in a refrigerator, consisting of a bolt passing through an opening in the porcelain-coated steel lining, and a closed type of nut with washer attached, which, in position, engages the lining and extends inwardly from the refrigerator wall, thus forming a support for the shelf in the provision chamber. In the District Court these claims were held invalid for want of invention. This precise type of shelf support is old in analogous arts, but its use in combination with the porcelain-coated steel linings of refrigerators is urged as of such great novelty and utility as to be patentable.

Prior to the use of the shelf supports of the patent, all manufacturers of porcelain-lined refrigerators used the ordinary screw hook, the screw portion of which was inserted through openings left therefor in the lining and screwed into the wooden casing beyond until the washer provided at the head of the screw contacted with or engaged the surface of the lining. Frequent difficulties were encountered in this practice, due to the rigidity of attachment between lining and case and the contraction and expansion to which the lining was subjected by temperature changes. The linings also had a tendency to warp somewhat in the process of baking the porcelain coating, and where the lining bulged inwardly at the opening left for the shelf support, a greatly increased pressure was often necessary to affix it. Thus in inserting the shelf supports, as well as afterwards, there was a marked tendency to chipping of the porcelain. This is said to be avoided in the patented device by attaching the shelf supports to the lining before the lining is placed in the case, by rotating the bolt or threaded portion of the support while that carrying the washer and in contact with the porcelain is held immovable during attachment, and by thus eliminating all stress and strain due both to attaching the shelf support and to temperature changes.

Other advantages are claimed for the new use, such as the fact that the supports are easily cleaned, that the head of the bolt member operates as a spacing means between the lining and the case, and that the washer entirely covers the opening, preventing circulation of air or the entrance of germs; but these are mere incidental results, either existing in the shelf support of the prior art or of insufficient moment to evidence existence of invention, even if functioning as alleged, which, in the case of the bolt head spacing the lining from the case, is at least of doubtful existence, utility, or necessity.

We are convinced that in the adoption of the specific shelf support of the claims in issue the patentee exercised no more than a high degree of mechanical ability and power of selection. It may well be that the enumerated advantages of the use of this device in connection with enameled or porcelain-coated metal had not theretofore been recognized, but the device itself is old, and as described in the patent operates in a manner identical with the devices of the prior art. The use of the shelf support of the patent is only a new or enlarged use of an old device. Such discovery of new uses for or newly observed functions of a device well-known in the mechanical or structural arts is not patentable invention. Penn. R. R. v. Locomotive Truck Co., 110 U. S. 490, 4 S. Ct. 220, 28 L. Ed. 222; Dunham Co. v. Cobb, 19 F. (2d) 328, 330 (C. C. A. 6), and especially the very complete treatment of this subject and cita-

---

[1] 7. A refrigerator, comprising a case, a lining in the case and spaced apart from the same, a shelf support projecting inward from the lining and engaging the inner surface of the same, and a fastening extending through the lining and into the support and having a head between the lining and case spacing the same apart.

8. In a refrigerator, a lining having an opening, a shelf support engaging the lining at one end and covering said opening, and a fastener inserted through said opening and within the support.

tion of authorities in Weir Frog Co. v. Porter, 206 F. 670, 674 et seq. (C. C. A. 6). The District Court properly held claims 7 and 8 of patent No. 970,672 invalid for lack of invention.

[3, 4] Claims 1, 2, and 4 of patent No. 1,-147,288 (quoted in the margin[2]), are in issue. This patent also relates to enameled or porcelain-coated refrigerator linings. Such linings consist of a single sheet of metal bent to form back and sides on which a porcelain or enamel coating has been baked prior to use. To this, top and bottom of the same material are attached and the entire assembled lining is firmly affixed to the front wooden frame of the refrigerator, and thus attached, is inserted into the wooden case, leaving a small air space between the lining and the side walls and top of the case for insulation purposes.

Prior to the invention of the patent in suit such linings were usually affixed to the front frame by providing that the vertical front edges of the sides be turned inwardly at right angles. These inwardly-turned edges were then placed against the posts of the front frame and held tightly clamped thereto by the overlapping flange or outwardly extending portion of wooden angle strips which were also nailed to the post. These wooden clamps served the double function of providing a seat for the door of the refrigerator and

of clamping the lining to the front post. The objection to this form of construction was that it produced a hidden corner, which was difficult to keep clean, and which offered a place within the provision chamber for the accumulation of dirt, germs, and decay.

Whittier avoided these disadvantages to a sanitary refrigerator, without material loss of space, by bending the sides adjacent their forward edges first inwardly at an obtuse angle, then outwardly in lines substantially parallel to the sides, and then at right angles outwardly in lines substantially parallel to the back. Instead of the inwardly bent faces adjacent the posts at the forward edges, of the old art, the patentee provided outwardly bent faces for attachment to the posts, and "means attached to the frame extending over the said outwardly bent portion to thereby secure the lining to the frame." This produced an interior which, from absence of sharp angles, could easily be kept in a clean and sanitary condition, and which was of substantially the same interior capacity or size. The District Court held that in so devising the shape and means of attachment of the lining to the frame, and in placing the finishing strip (claim 4), which provided the seat for closing the door, the inventor had displayed no more than mechanical skill in the use of well-recognized methods of construction. This issue we find it unnecessary to here decide.

It will be noted that the claims in suit specifically provide for "means extending over the said outwardly bent portion," "means seating in the depressions," or "means extending into the grooves and secured to the posts." In the original application for patent the first three claims had been for a refrigerator lining of the particular shape shown in the patent as issued, but without provision for the means of attaching such lining to the frame. Original claim 1 will serve as a typical example:

"1. A refrigerator lining comprising a back, sides, bottom, and top of metal, with an open front, said sides adjacent the front edges thereof being bent inwardly at an obtuse angle for a short distance, then forward, and then outwardly in substantially parallel relation to the back."

These first three claims were rejected on reference to prior patents, were amended and again rejected, and were then canceled, the patentee saying: "The rejected claims have been canceled and a new claim is submitted, which is drawn along the lines of the allowed

---

[2] 1. In a refrigerator, a lining having vertically spaced apart sides and an integral back connecting said sides, the sides being bent inwardly and then outwardly adjacent their forward edges, a frame back of which the lining is located with the outwardly bent portions of the sides lying substantially parallel to the rear of the frame, and means attached to the frame extending over the said outwardly bent portion to thereby secure the lining to the frame.

2. In a refrigerator, a lining having spaced apart sides with the forward portion of each side bent inwardly and then outwardly, forming depressions in the outer sides of the lining at the forward edges thereof, a frame, and means seating in the depressions and attached to the frame, thereby securing the lining in fixed relation to the frame.

4. In a refrigerator, a lining having spaced apart sides, a top and bottom, each of said sides being bent inwardly toward each other at an obtuse angle to the main body of the sides, then forwardly and then outwardly in substantially parallel relation to the back, forming a groove extending the full length and at the front of the lining, a frame in front of the lining, spaced apart posts secured to the frame and bearing against the outturned edges of the lining, means extending into the grooves and secured to the posts for securing the lining in fixed relation to the frame, and finishing strips secured to the posts on the inner sides thereof, substantially as described.

claims, but restricted to more specific details of construction. Its allowance is requested."

The device which it is alleged infringes the claims in suit omits all "means extending over" the outwardly bent portions of the lining, but to attach the lining to the frame use is made of a series of horizontal clamping connections, bolted to the outside walls of the lining by the shelf supports, flanged and perforated at the forward ends and secured to the frame by screws. The outwardly turned edges of the sides of the lining are thus tightly drawn and firmly held to the posts of the frame, but by means not extending into the grooves or over such edges. In both the patent and the alleged infringement the points of contact of the edges of the lining and the posts are hidden by a finishing strip. This is but a very minor detail of construction.

It is now contended, however, that the means claimed in the patent are but the preferred means of attaching the lining to the posts, that the clamping plates of the defendant are but the mechanical equivalents of the means claimed, and that the inventor should be given the benefit of the full scope of his improvement in the art. The decisions of the Supreme Court and of this and other circuits upon the doctrine of the range of equivalents open to a patentee in the protection of his invention, commencing with Winans v. Denmead, 15 How. 330, 14 L. Ed. 717, and extending down to the most recent decisions, are too well known to need citation or individual comment. It is sufficient to say that, in general, the doctrine of these decisions has no application to a case of voluntary limitation by the patentee or of estoppel by Patent Office proceedings. It is manifest that all linings must be firmly attached to the front frame of the refrigerator, and that, if all possible means of such attachment were to be included within the scope of the invention, a lining of the shape disclosed in the patent would itself be patentable, without regard to the means of attachment. Notwithstanding this obvious fact, the patentee canceled his claims for the lining alone, inserted in each claim a provision for attachment in a definite manner, and is now estopped from seeking the benefit of that construction of the claims allowed which would make them the full equivalent of the claims canceled. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 444, 47 S. Ct. 136 (71 L. Ed. 335);

Campbell v. American Shipbuilding Co., 179 F. 498 (C. C. A. 6); Vanmanen v. Leonard, 248 F. 939 (C. C. A. 6).

While these cases are specific in holding that it is immaterial whether the Examiner was right or wrong in the rejection of the original claim, or in his view of the patentability of the device as originally claimed, the language of the Supreme Court in I. T. S. Rubber Co. v. Essex Rubber Co., supra, is so appropriate to the situation here existing that it seems unnecessary to quote from or comment upon the decisions of this court and those there cited. To quote the language of the Supreme Court is demonstrative of its application:

"So, where an applicant whose claim is rejected on reference to a prior patent, without objection or appeal, voluntarily restricts himself by an amendment of his claim to a specific structure, having thus narrowed his claim in order to obtain a patent, he 'may not by construction, or by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments which amount to a disclaimer.' Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 677 [41 S. Ct. 600, 603 (65 L. Ed. 1162)]."

By so canceling original claims 1, 2, and 3, the patentee has surrendered all claim to a monopoly in a lining alone of the specific form used by both plaintiff and defendant, and has limited himself to a narrow range of equivalents of the attaching means specifically disclosed and claimed. By the action of the patentee in the Patent Office proceedings, he did give up material rights (Bundy Mfg. Co. v. Detroit Time-Register Co., 94 F. 524 [C. C. A. 6]) in order to secure that which he retained. This does not bar such patentee from relying upon the claims granted (Egry Register Co. v. Standard Register Co., 267 F. 186 [C. C. A. 6]), but it does estop him from now seeking, under the doctrine of equivalents, that which he so specifically relinquished. We are of the opinion that the means used by the defendants for attaching the lining to the frame was a substantial departure from the means specified and claimed in the patent in suit, and it is therefore unnecessary to determine the question of invention. The petition was properly dismissed on the ground of noninfringement.

Judgment affirmed.