The COLD METAL PRODUCTS COMPANY, Appellant,

v.

NEWPORT STEEL CORPORATION, Appellee.

No. 12253.

United States Court of Appeals Sixth Circuit.

Oct. 5, 1955.

As Amended Oct. 13, 1955.

William H. Webb, Pittsburgh, Pa., Morton Burden, Jr., Webb, Mackey & Burden, Pittsburgh, Pa., J. Mack Swigert, Taft, Stettinius & Hollister, Cincinnati, Ohio, on brief for appellants.

Arthur W. Dickey, Detroit, Mich., Frank V. Benton, Jr., Benton, Benton & Luedeke, Newport, Ky., John C. Sterritt, Harness, Dickey & Pierce, Detroit, Mich., on brief for appellee.

Before MARTIN, McALLISTER, and STEWART, Circuit Judges.

STEWART, Circuit Judge.

This is an appeal from a judgment of the district court dismissing the complaint in appellant's action for infringement of certain patents. The patents in suit are Keeney and Ferm, No. 1,918,968, dated July 18, 1933; Steckel, No. 1,977,214, dated October 16, 1934; and Montgomery, No. 2,087,065, dated July 13, 1937.[1] These patents, all owned by appellant, relate to the hot rolling of metal sheets and strips in relatively great widths and lengths from relatively thick and short slabs or ingots. More particularly, they relate to a reversing type of hot strip mill, as distinguished from the tandem or continuous type. The charge of infringement was based upon appellee's operation and use of a reversing hot strip rolling mill, built in 1949 and operated continually thereafter at appellee's plant near Newport, Kentucky.

In a thorough and conscientious opinion accompanied by complete findings of fact and conclusions of law, the district court held all three of the patents in suit invalid for want of invention. The court further held that there had been no infringement by appellee's mill. The district court's opinion appears in 119 F. Supp., at page 880.

As stated in the Keeney and Ferm patent, "It is the primary object of the present invention to provide means whereby long and thin strips can be heat-

---

[1] At issue are Claims 2, 5, 10, 16, 17, 18, 19, 20, 22 and 23 of the Keeney and Ferm patent; Claims 4, 5, 12, 18, and 22 of the Steckel patent; and all five claims of the Montgomery patent.

ed effectively and economically during the process of rolling, and therefore can be reduced to any thinness attainable by hot rolling, and the entire operation after the initial roughing-down, can, if desired, be carried out in a single stand of rolls."

Broadly stated, the teaching of this patent is a reversing mill resulting from the combination of a mill stand, roll tables on each side of the mill stand, heating chambers above the roll tables, a coiler or drum mounted in each chamber on which the material being rolled can be coiled, means for guiding the material from the mill stand along the roll tables and upwardly to each coiler, and means for operating each coiler in order to coil the material thereon and return the same back to the roll table, so that the material can be passed back and forth through the mill stand and coiled in the heating chambers between passes. The material to be rolled, having been preheated, can be passed back and forth through the mill stand "in the flat," i. e., along the roll tables on each side without being wound onto the coilers, until it is thin enough and long enough to be coiled.

The mill disclosed in the Steckel patent is of the same general type as that disclosed by Keeney and Ferm, except that Steckel discloses and claims a mill in which sections of the roll tables, as distinguished from guides mounted above the tables, are used for deflecting the material being rolled upwardly from the plane of the tables into the coilers. Another difference is that the Steckel patent discloses a mill in which the coilers and heating chambers are located close to the mill tables so that the material can enter through the bottom of the chamber instead of through a slot in the top of the chamber as shown in Keeney and Ferm.

The Montgomery patent does not claim invention in apparatus or mechanism. It claims only a method or process of rolling a heated slab of metal in a roughing mill until it is thin enough to coil, and, in the same heat, feeding it to a reversing finishing hot mill with coilers, such as that of Keeney and Ferm or Steckel.

The evidence showed that the hot rolling of sheets and strip is a rather specialized part of the rolling art. Hot rolled sheets and strip are ordinarily from $\frac{3}{16}$ of an inch to $\frac{1}{20}$ of an inch in thickness. The product finds a wide use, particularly in the automobile industry, and as a raw material for cold reduction into sheets of various forms and into tin plate.

Prior to 1927 it was not possible to produce sheets or strip by hot rolling in lengths or widths sufficient to satisfy the demands of industry. The two basic production methods were sheet rolling on 2-high hand mills and hot strip rolling on a series of 2-high or 3-high mills. The first method was largely a manual operation. It was relatively slow and inefficient, and sheets of not more than ten feet in length could be rolled. The method is described in detail in Cold Metal Process Co. v. Carnegie-Illinois Steel Corporation, 3 Cir., 1939, 108 F.2d 322, 324–328. The second method consisted in reheating a slab and passing the same through several plain bearing mill stands, generally ten or twelve. Under this method the thinness to which the material could be rolled, its width and its length, were all interdependent, so that only short lengths were producible in any substantial width, and the highest ratio of width to thickness was about 200 to 1. In addition, the costs were high and the product poor, because of a high scrap loss and an uneven gauge in the finished product.

In 1927 a great advance was made in the art of hot rolling with the commercial introduction of the continuous 4-high antifriction bearing mill.[2] With this mill it was possible to produce hot rolled steel strip of greatly increased lengths and widths, of uniform gauge, and at a greatly increased speed. The advance in the art represented by the continuous

2. A "4-high" mill is one in which the two reducing or "working" rolls are backed up by two additional rolls, as contrasted to a "2-high" mill in which there are but the two reducing rolls.

4-high antifriction bearing mill is described in detail in Cold Metal Process Co. v. Carnegie-Illinois Steel Corporation, supra. See also Cold Metal Process Co. v. United Engineering & Foundry Co., D.C.W.D.Pa., 1933, 3 F.Supp. 120; Cold Metal Process Co. v. American Sheet & Tin Plate Co., D.C.N.J.1938, 22 F. Supp. 75. It was not long after the successful introduction of the continuous 4-high antifriction bearing mill that the applications for the patents in suit were filed.[3]

There can be no question but that the mills and methods of the patents in suit represent a great practical advance over the art prior to 1927. The advantages which appellant claims over the continuous 4-high antifriction bearing hot mill, however, while not insubstantial, are considerably less dramatic. They may be summarized as follows: (a) The patented mill can be installed at a considerably lower initial cost. (b) The patented mill requires only about one-half the building space. (c) The patented mill is better adapted for the rolling of a wide variety of sizes and types of steel strip. (d) The patented mill has a marked advantage from the standpoint of edge cracking of the material being rolled. (e) The patented mill is superior in the rolling of alloy steel and silicon steels because it is possible to control the number of passes and rolling temperatures to an extent not possible in any other mill. (f) Since in the patented mill it is possible to roll directly from the slab, longer coils can be produced, and production costs are lowered because of the elimination of reheating.

■ It is appellant's contention that "The advantages of and results accomplished by the patented mills and methods, are of such marked character that a comparison thereof with the old mills should set at rest the issue of validity." There would be merit in this argument, particularly in view of the commercial success of the patented mill, if utility alone were the criterion of validity. But it was invention, not utility, that the district court found wanting in the patents in suit, and we think the court was not in error in its conclusion.

■ Appellant concedes that the patents cover combinations of elements all of which were old in the art:—reducing rolls, roll tables, coilers, heating chambers, and guides or tiltable roll table sections. It is also clear that the basic combinations covered by the patents were also old, either having been disclosed in prior patents or in previous commercial use. There was nothing new at the time of the Keeney and Ferm and Steckel patents in the concept of a single stand reversing mill with coilers on either side for reeling and unreeling the strip as it was being rolled. Such mills had been used extensively in the cold rolling process. There was nothing new in the concept of a single stand hot rolling mill with heated coilers on either side for handling the length of a strip being hot rolled and for maintaining the same at rolling heat. This had been fully disclosed in the prior patent to Wilmot, No. 162,732, dated April 27, 1875. With respect to the Montgomery patent, there was nothing new in the procedure of rolling directly from an ingot or a slab to finished sheet by lining up a roughing mill ahead of a finishing mill, and completing both rough rolling and finish rolling without reheating the slab. This was disclosed in the prior patent to Cushwa, No. 904,605, dated November 24, 1908.

Appellant lays great store by the fact that "prior to the inventions of the patents in suit, there never was such a thing as a single-stand hot mill with coilers and coiler furnaces on opposite sides thereof in the practical rolling art," and that the mill of the Steckel patent, "for the first time in the history of the world, demonstrated the commercial practicability of hot rolling strip on a reversing hot mill with coilers and

---

**3.** Keeney and Ferm's application was filed January 12, 1928; Steckel's application was filed May 4, 1931; Montgomery's application was filed January 19, 1934.

**22**

coiler furnaces on opposite sides of the roll stand." The evidence seems to indicate that it was the antifriction bearing mill which in fact had overcome many of the long standing practical obstacles to the hot rolling of long strips of metal. The evidence also seems to indicate that it may well have been the development of electrical power and control equipment that served to make the patented mill commercially practicable. Appellant's president testified: "If it had not been for the wonderful work done by the electrical equipment manufacturers, many of the results which have been obtained since 1927 and beyond wouldn't have been possible."

In view of the then state of the art, we think that the particular mechanical arrangements disclosed by the patents in suit represented nothing more than a felicitous selection of known elements, none of which contributed in combination any new or unusual function, and that the subject matter as a whole would have been obvious at the time the claimed inventions were made to persons having ordinary skill in the art of hot rolling of metals. 35 U.S.C.A. § 103.

In holding that the appellee had sustained its burden of overcoming the presumption of validity of these patents, the district court placed prime reliance upon Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, concluding that "the rules laid down in this last pronouncement on the subject must be accepted as something of an innovation in patent law." [119 F.Supp. 889.] See General Motors Corp. v. Estate Stove Co., 6 Cir., 1953, 203 F.2d 912, 917, 918 [petition for rehearing]; Buffalo-Springfield Roller Co. v. Galion Iron Works Mfg. Co., 6 Cir., 1954, 215 F.2d 686.

We are of the opinion that the patents in suit are lacking in invention, as that concept was understood long before the decision in the Great Atlantic & Pacific

Tea Co. case. Hotchkiss' Ex'x v. Greenwood, 11 How. 248, 13 L.Ed. 683; Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008; Toledo Pressed Steel Co. v. Standard Parts, Inc., 1939, 307 U.S. 350, 356, 59 S.Ct. 897, 83 L.Ed. 1334. In the light of the views here expressed, it is not necessary to consider the question of infringement.[4]

The judgment of the district court is affirmed.

---

4. See General Motors Corp. v. Estate Stove Co., 6 Cir., 1953, 201 F.2d 645, at page 659, and cases cited in footnote 11 on that page.