**McLOUTH STEEL CORPORATION,**
**Plaintiff,**

v.

**The COLD METAL PRODUCTS COM-**
**PANY, Defendant.**

**Civ. A. No. 9070.**

United States District Court
E. D. Michigan, S. D.

Sept. 12, 1956.

William B. Cudlip, T. Donald Wade, Detroit, Mich., for plaintiff, John Vaughan Groner, Ronald F. Ball, New York City, of counsel.

William H. Webb, Pittsburgh, Pa., Clarence B. Zewadski, Detroit, Mich., Morton Burden, Jr., Pittsburgh, Pa., for defendant, Webb, Mackey & Burden, Pittsburgh, Pa., Whittemore, Hulbert & Belknap, Detroit, Mich., of counsel.

LEVIN, District Judge.

McLouth Steel Corporation instituted this action for declaratory judgment against the Cold Metal Products Company, seeking to have certain claims of six patents owned by the Cold Metal Products Company, successor in title to the Cold Metal Process Company, declared invalid and void. Cold Metal filed a counterclaim charging infringement of those claims. The patents and claims in suit relate to reversing hot strip mills. They are:

| Patent | Patentee | Claims in Suit |
| --- | --- | --- |
| 1,918,968 | Keeney & Ferm | 2, 5, 10, 11, 16 to 26 |
| 1,977,214 | Steckel | 2 to 5, 11 to 13, 18 and 22 |
| 2,072,121 | Montgomery | 2 and 3 |
| 2,072,122 | Montgomery | 6, 10, 15 to 20 |
| 2,087,065 | Montgomery | 1 to 5 |
| 2,214,107 | Montgomery | 4 and 6 to 10 |

Since the early 1930s McLouth has been a producer of steel strip and in 1949 commenced operation at its Trenton, Michigan plant with a new reversing hot strip mill, the alleged infringing mill, and continued operating it until 1954 when it was dismantled and sold.

Prior to the events here related, Abram P. Steckel had invented and obtained patents Nos. 1,744,016 and 1,779,195 covering his invention of a 4-high anti-friction bearing rolling mill. See, Cold Metal Process Co. v. Republic Steel Corp., 6 Cir., 233 F.2d 828, affirming D.C., 123 F.

Supp. 525. A series of these mills arranged in a continuous train comprised the 4-high anti-friction bearing continuous mill which for commercial purposes substantially obsoleted all earlier means of hot rolling.

Because of the extremely high and sometimes prohibitive initial cost of installing a continuous mill of this type, Steckel sought to provide a relatively lower cost hot strip mill of commercial utility. By June of 1927 he had filed an application which eventuated into patent 1,857,670. In July 1927 Steckel and

Cold Metal, a corporation formed to promote the inventions of Steckel, sought to interest a steel company in Steckel's proposed reversing hot strip mill in order to secure financial assistance and a place where the mill could be built with the appliances Steckel thought were needed.

Bethlehem Steel was first approached but after one meeting between Steckel and two Bethlehem representatives, nothing developed. Subsequently, L. A. Beeghly, an executive of Cold Metal, and F. B. Hufnagel, President of Crucible Steel, arranged a meeting between Steckel, and R. M. Keeney and J. F. Ferm, engineers employed by Crucible. After one or two meetings between Steckel and Keeney and Ferm, the close contact between Crucible and Cold Metal waned and a period of silence set in. Cold Metal then became suspicious that Crucible or Keeney and Ferm were proceeding alone in the development. Beeghly immediately sought to ascertain the facts and, after serious accusations in Hufnagel's office, discovered from Keeney that he and Ferm had filed a patent application dated January 12, 1928 embodying an idea which stemmed from the disclosures made to them by Steckel concerning a reversing hot strip mill.

After Beeghly stated that Cold Metal would not grant Crucible a cold mill license under the then existing circumstances, Hufnagel suggested that patent counsel for the two firms decide who was first with the idea. Then the patent counsel of Crucible and Cold Metal exchanged their records and files and mutually determined that Cold Metal "was ahead." The pending application was assigned in November 1928 to Cold Metal under two instruments of assignment— one from Keeney and Ferm as assignors and the other from Crucible as assignor. Cold Metal thereafter continued the prosecution of the Keeney & Ferm application and the patent issued July 18, 1933 as No. 1,918,968, one of the patents in suit.

In 1929 Cold Metal successfully made the arrangements with Youngstown Sheet & Tube Company that it had ear-

lier sought with Bethlehem and Crucible. Between that date and 1934 Cold Metal erected a reversing hot strip mill and carried out an experimental rolling program demonstrating the commercial feasibility of the mill at the Brier Hill and Campbell plants of Youngstown Sheet & Tube Company.

After the inception of the work at Brier Hill, an application was filed by Steckel on May 4, 1931 in the Patent Office, covering the reversing strip mill erected at Brier Hill. This application issued as patent No. 1,977,214 on October 16, 1934. The four other patents in suit —the Montgomery patents—represent the further contributions of Alonzo B. Montgomery, an engineer skilled in the hot rolling process who had been employed by Cold Metal to erect and operate the reversing mill at Brier Hill. These patents cover developments in methods and apparatus for hot rolling conceived by Montgomery during this experimental rolling at Brier Hill and the Campbell works.

Three basic issues are before the Court: (1) The validity of the claims of the patents in issue. (2) The infringement of the claims by McLouth's mill during the period 1949–1954. (3) The asserted fraudulent procurement of the Keeney & Ferm '968 patent.

Claims 2, 5, 10, 16, 17, 18, 19, 20, 22 and 23 of the Keeney & Ferm '968 patent; claims 4, 5, 12, 18 and 22 of the Steckel '214 patent; and all five claims of the Montgomery '065 patent were held invalid in Cold Metal Products Co. v. Newport Steel Corp., 6 Cir., 1955, 226 F.2d 19, affirming D.C., 119 F.Supp. 880.

The Court of Appeals stated at page 22 of 226 F.2d:

"In view of the then state of the art, we think that the particular mechanical arrangments disclosed by the patents in suit represented nothing more than a felicitous selection of known elements, none of which contributed in combination any new or unusual function, and that the subject matter as a whole would have been obvious at the time the claimed

inventions were made to persons having ordinary skill in the art of hot rolling of metals."

■ Following this decision of the Court of Appeals, the defendant submitted a supplemental brief, directing attention to evidence in the present case which was not before the Court in Newport. I have carefully considered this evidence and I am satisfied that it does not justify a determination contrary to that of Newport. With respect to the claims of the patents in suit not considered in Newport, I hold them also invalid for lack of invention.

### Keeney & Ferm '968.

Claims 16, 17 and 18 of the Keeney & Ferm patent in substance provide for a mill, tables for supporting relatively thick material, and heated coilers for coiling the material when it has been thinned and elongated. Claim 17 differs from 16 in that it is also addressed to means of maintaining the coiled material at elevated temperatures. Claim 18 emphasizes that the roll tables used must be of such character as to support the material "in its entirety" during the rolling. The earlier Steckel '670 patent disclosed a combination of a mill, "motor driven" coilers on either side of the mill, and roll tables.

The asserted ambiguities of the '670 patent, set forth by Cold Metal as precluding '670 from being considered as an anticipation of Keeney & Ferm, were not ambiguities to those skilled in the art. Steckel was entitled to:

"* * * begin at the point where his invention begins, and describe what he has made that is new, and what it replaces of the old. That which is common and well known is as if it were written out in the patent and delineated in the drawings." Loom Co. v. Higgins, 1881, 105 U.S. 580, 586, 26 L.Ed. 1177.

Claims 11, 24, 25 and 26 are referred to as the "pinch-roll claims." Claim 11 is a combination claim substantially that of Steckel '670 plus the addition of pinch rolls. Claim 24 to 26 inclusive provide for methods of rolling strip in a mill employing pinch rolls for feeding the material. As illustrated by the Ellis patent No. 997,765 and the Daniels patent No. 1,108,144, pinch rolls were well known in the rolling field as a means of feeding material. Although the specific combination in claim 11 was not disclosed by the prior art, the concept of invention is unduly strained by the contention that the addition of this well-known feeding element to a known combination produces a patentable invention. The new functions of the pinch rolls in the combination of claim 11 asserted by Cold Metal to justify a holding of invention are new only in view of their specific new setting. The inherent nature of pinch-roll mechanisms permitted the performance of these functions in combinations or apparatus other than that provided in claim 11. The rolling methods covered by claims 24 through 26 represent the obvious steps by which rolling in the mill of Steckel '670 with a pinch-roll feed would be accomplished. Compare, Grand Rapids Refrigerator Co. v. Stevens, 6 Cir., 1928, 27 F.2d 243.

Claims 2, 5, 10 and 19–23, the "guide" or "kick-up" claims, are also invalid. These claims cover various combinations of a mill, mill tables, coilers, kick-ups, chutes and guides to divert the material and/or keep the material in its correct path. But kick-ups, chutes and guides were well known in the art. See Ellis patent 997,765; Biggert patent 1,554,-551. Their function was merely that which they had long been used to perform.

### Steckel '214.

Claims 2 and 3 of the '214 patent are directed to the same elements in combination as disclosed in the Keeney & Ferm patent. The distinguishing features of these claims are that claim 2 of Steckel '214 requires the pinch rolls to be "in the plane of the table but so arranged as to be out of the way of the material rolled back and forth on the mill tables," and claim 3 provides that pinch rolls perform the function of "tensioning

issuing material." The pinch-roll function of tensioning material was urged by Keeney and Ferm upon the Patent Office during the prosecution of that application, subsequent to the filing of Steckel '214. But such function was inherent in the pinch rolls of Keeney & Ferm, and thus dated from the filing date of Keeney & Ferm which preceded the filing date of Steckel '214.

The feature of claim 2 here urged as distinguishing Steckel '214 from Keeney & Ferm is merely a designer's choice of location, plus the teaching disclosed in Ellis patent No. 997,765 of elevating the upper pinch roll from the lower in order to place the upper "rolls out of the way of material." Claims 2 and 3 are invalid in view of the teachings of Keeney & Ferm, and Ellis for as the Supreme Court said in Bassick Mfg. Co. v. R. M. Hollingshead Co., 1936, 298 U.S. 415, 424–425, 56 S.Ct. 787, 791, 80 L.Ed. 1251:

"* * * The question then is whether, by this method, the patentee, by improving one element of an old combination whose construction and operation is otherwise unchanged, may, in effect, repatent the old combination by reclaiming it with the improved element substituted for the old element. That this cannot be done is shown by numerous cases in this and other federal courts."

Claims 4, 5, 18 and 22, referred to for brevity as the "kick-up" claims, comprise, generally, the same contribution of elements as disclosed in Keeney & Ferm. The distinguishing features of the elements are that claims 4, 5 and 18 provide for movable sections of the mill tables to divert the material upwardly into the coilers. Claim 22 provides for heat conserving chambers open at the bottom and kick-ups for diverting material through the bottom of the chambers. The variations of the elements urged to constitute patentability over the combination of Keeney & Ferm are, briefly, the use of a kick-up rather than a kick-down and the use of a bottom opening furnace rather than a side opening furnace. Although

practical improvements and desirable features, including lower heat loss, decreased vertical strip travel and decreased scale accumulation flow from the rearrangement of these elements, there is no change in the operation of the combination. A mechanical rearrangement and improvement of the elements of Keeney & Ferm would have seemed obvious to those skilled in the art at the time. Claims 4, 5, 18 and 22 are invalid over Keeney & Ferm.

Claims 11, 12 and 13 are referred to as the "flexing" or "scale-breaking" claims. Claims 11 and 12 are method claims directed to the method of hot rolling with flexing between passes. Claim 13 is an apparatus claim directed to a combination including means for flexing material between passes. In specific application, the claims are directed to the scale breaking roll 99 of the Steckel '214 drawings which, in addition to the stated function of flexing the strip, also acts as a guide or guard roll in preventing the hot metal strip from dragging on the bottom of the Steckel furnace. As a guide or guard, the function of the roll was well known in the art. See Whitman patent No. 386,908; Fork patent No. 1,-859,294. As a flexing means, a roll of this type was shown in Keeney & Ferm wherein the use of auxiliary rolls for maintaining tension on the strip when needed was demonstrated. A Cold Metal expert witness testified that only occasionally would the Keeney & Ferm rolls act as a scale-breaker. The adaptation to permanent use of a beneficial function, occasionally performed in the past by a disclosed means, does not constitute invention. Also, the "* * * discovery of new uses for or newly observed functions of a device well known in the mechanical or structural arts is not patentable invention." Grand Rapids Refrigerator Co. v. Stevens, 6 Cir., 1928, 27 F. 2d 243, 244; Mathews Conveyer Co. v. Palmer Bee Co., 6 Cir., 1943, 135 F.2d 73, 89.

Montgomery '121.

Claims 2 and 3 of the Montgomery '121 patent are method claims relating

to the guiding of material in sheet or plate form. Claim 2, simply stated, applies to the method of guiding a slab into the mill rolls wherein the entry guides are substantially parallel and the exit guides for receiving the slab from the mill rolls are converging. Claim 3 adds to the method of claim 2 the reversal of the guides with the reversed direction of rolling. From the evidence and testimony introduced during the hearing, I am of the opinion that claims 2 and 3 of this Montgomery patent do not constitute invention over Steckel '214, Grey patent No. 632,181 and the French patent No. 414,906 to Sack. Steckel '214 discloses parallel guides both on the entry and exit sides of the rolls of his hot strip mill. The usual operation of the beam guides of Sack discloses parallel entry guides and converging exit guides. It is clear from the specifications of the Grey patent on apparatus for rolling beams that parallel entry guides and converging exit guides were disclosed as being employed on the last pass through his mill. The drawings of Grey fail to disclose a pivot mounting essential for convergence on the last pass for the guides R R and it is urged that this failure to so provide precludes Grey as anticipating Montgomery '121.

However, one of Cold Metal's expert witnesses admitted that in order to obtain the result taught by the specifications of Grey, he would have only to put a pivot support in the guides and would not have been misled by the omission of the pivot in the drawings. This Montgomery adaptation of the beam guides of Sack and Grey to the hot strip guides of Steckel is not a contribution to the art justifying patentability.

## Montgomery '122.

■ Claims 6, 18 and 19 of the '122 patent are combination claims specifically including what is termed the "high lift—low lift" element. These claims provide means for elevating the pinch rolls to an upper or "high lift" position and an intermediate or "low lift" position. These claims are distinguished from the pinch roll actuating mechanism of Steckel '214 only in that a desired intermediate position of pinch roll elevation is attained by adding another independent cylinder and piston to the actuating mechanism of Steckel. These claims of the patent represent only aggregations—simply an addition of another means of the type shown by Steckel to perform the same function. The contention of Cold Metal that new functions are performed by the pinch rolls in the "low lift" position does not save these claims from invalidity as aggregations. The function of a roll as a horizontal and vertical guide and as a means of tensioning the strip was disclosed in the prior art. See Keeney & Ferm '968; Whitman patent No. 386,-908; Fork patent No. 1,859,294. These claims merely add an old element performing a known function to a known combination.

Claims 15 and 20 are directed to a reversing strip mill including, in combination with other elements, parallel entry guides and converging exit guides with means for so positioning the guides. These claims attempt to repatent the combination of Steckel '214 by changing in details one of the elements of combination. As noted heretofore, the French Sack patent and Grey No. 632,181 disclose parallel entry and converging exit beam guides but do not show an arrangement for guiding hot strip. However, Steckel '214 does show a hot strip guiding mechanism parallel on the entry and exit sides of the mill. Claims 15 and 20 of Montgomery '122 do not teach anything new but are merely adaptations of these prior art disclosures.

Claims 10, 16 and 17, the "controller claims," are also invalid. These claims cover combinations including such elements as a mill, side guides, pinch rolls and specifically controller operated means for positioning the guides and reversing the mill rotation. The testimony is clear that electrical actuating controller means were well known in the art and capable of specific adaptation to perform any need that arose in a mill operation. No contention is made that Montgomery invented the controller means. There is

no invention by Montgomery in merely perceiving the need for a specific controller in combination with other elements.

### Montgomery '065.

All five claims of this patent pertain to methods of rolling strip involving the common principle of employing a roughing mill in advance of a reversing coiling strip mill. The variations over claim 1 expressed in claims 2, 3, 4 and 5 are minor.

The basic principle of the method disclosed in these claims was well known in the art. Keeney & Ferm specifically disclosed the alternative choice of a roughing mill in advance of their coiling strip mill by stating in the '968 patent:

"* * * the entire operation, after the initial roughing-down, can, if desired, be carried out in a single stand of rolls."

Further:

"The tilting sections are provided * * * to admit the strip coming from the roughing rolls of the mill * * *"

Montgomery, whose testimony was taken by deposition, stated that the use of a roughing mill in conjunction with a finishing mill was "regular practice" in the steel industry and had been for many years. Cushwa patent No. 904,605 shows a roughing mill in advance of a continuous finishing mill. The substitution of a reversing finishing mill for the continuous finishing mill of Cushwa, alternatives in the industry, does not constitute invention; nor does the requirement of these claims that the roughing and finishing be in the same heat distinguish them over the prior art. Cushwa, as did others in the industry, sought to avoid reheating and provided in his patent for a holding furnace to guard against delay, or for use, if delayed.

In holding these same claims invalid, the Court of Appeals said in Cold Metal Products Co. v. Newport Steel Corp., 6 Cir., 1955, 226 F.2d 19, at page 21:

"* * * With respect to the Montgomery patent, there was noth-ing new in the procedure of rolling directly from an ingot or a slab to finished sheet by lining up a roughing mill ahead of a finishing mill, and completing both rough rolling and finish rolling without reheating the slab. This was disclosed in the prior patent to Cushwa, No. 904,605, dated November 24, 1908."

### Montgomery '107.

Claim 4 of this patent refers to the same method disclosed by Steckel '214 of passing a slab back and forth through rolls in the flat to form a breakdown, passing the latter back and forth through rolls to form a strip, coiling between passes and flexing the material around the guide roll. The difference between claim 4 and Steckel '214 is that in claim 4 the guide roll is driven to reduce frictional drag on the strip and decrease roll warpage by equalizing thermal exposure. Activating the idling roll of Steckel '214 to overcome frictional drag and roll warpage would be apparent and obvious to those skilled in the art.

Claims 6 through 10 of this patent relate to a method of rolling strip, including steps in the pinch roll actuation during rolling. It is my opinion that these claims are invalid as representing merely variations in a number of steps during the search toward the optimum co-ordination of function during the rolling operation. They merely represent an improvement over the methods of Keeney & Ferm and Steckel in providing a step of deactivating the pinch rolls during coiling. Steckel disclosed driven pinch rolls in contact with the strip during coiling to provide tensioning of the strip. The pinch rolls of Keeney & Ferm, although in contact with the strip, were not driven during coiling. These Montgomery claims set forth rolling methods designed to avoid the cambering caused by the reduction of the strip resulting from the constant drive pinch rolls of Steckel. Here, simply, there was an intermittent deactivation of a mechanism—the pinch rolls—which, when continuously activated, had been determined to be unneces-

sary or detrimental to the operation. This is not invention.

For the reasons stated in this opinion, I hold all of the claims of the patents in suit invalid for want of invention. Since the disposition of this case is made on this issue, I do not deem it necessary to pass upon the asserted fraudulent procurement of the Keeney & Ferm '968 patent. Likewise, it is unnecessary to consider the infringement issue. E. g., General Motors Corp. v. Estate Stove Co., 6 Cir., 1953, 201 F.2d 645, at page 659; Cold Metal Products Co. v. Newport Steel Corp., 6 Cir., 1955, 226 F.2d 19, 22.

An order consistent with the views herein expressed may be presented for signature.