**DEMPSTER BROTHERS, INC.,**
v.
**BORG–WARNER CORPORATION.**
Civ. A. No. 2760.

United States District Court
E. D. Tennessee, N. D.
Dec. 16, 1958.

J. Preston Swecker, Wm. L. Mathis, Washington, D. C., Charles D. Snepp, Knoxville, Tenn., for plaintiff.

Tapp, Carson, Tate & Felts, Knoxville, Tenn., C. G. Stallings, Chicago, Ill., for defendant.

ROBERT L. TAYLOR, District Judge.

This matter came before the Court on the complaint of the plaintiff against the defendant for infringement by the defendant of claim 8 of the United States Letters Patent No. 2,702,142, issued to Harry W. Jones on February 15, 1955, on a container for trash, garbage and other refuse, and assigned to plaintiff, Dempster Brothers, Inc.

Upon trial of this cause in open Court on the issues of validity and infringement, and upon full consideration of the testimony, pleadings, admissions, depositions, demonstrations, exhibits, briefs and oral arguments, the Court now finds as follows:

### Findings of Fact

1. Plaintiff, Dempster Brothers, Inc., is a Tennessee corporation, with its principal place of business at Knoxville, Tennessee.

2. Defendant, Borg-Warner Corporation is an Illinois corporation and was substituted for the original defendant, Brooks Equipment & Mfg. Co., which had a place of business in Knoxville, Tennessee, when the complaint herein was filed.

Defendant is charged with infringement of ·Claim 8 [1] only of the aforesaid

---

1. *Claim 8.* A container of the character described comprising an upright back wall and upright end walls rigidly secured together, said container having the side thereof opposite the back wall open throughout a substantial portion of the height of the container, and a closed horizontal bottom rigid with said back wall and ends and substantially flat forming a support upon which the container may rest in upright position, upper and lower doors hinged together about a substantially horizontal axis and the upper door being hinged to the container at the upper edge portion thereof, said doors being arranged substan-

patent, which was issued on an application for patent filed by Harry W. Jones on November 23, 1951.

4. The patent relates to a container for refuse. Containers of the type involved here are portable. They may be carried to various refuse collection points and there set down as stationary containers. When filled, they may be hoisted upon a suitable truck chassis, carried to a dumping site, emptied, and returned to the collection points.

5. Among the objects of the patented container, as stated in the aforesaid patent, No. 2,702,142, are the following:

"One object of this invention is to retain a considerable quantity of liquid within the container while sitting in its position to be filled, and then later, when the container is raised and tilted forward on the transporting equipment in its carrying position, the liquid is retained in the container without danger of leaking out."

"Still another object of the invention is to improve the construction of containers of the character described to provide for the effective closing of an open side to retain the contents in the container, and yet will allow ready dumping thereof by tipping the container without the necessity of turning it over in an upside down position."

6. The device set forth and specifically defined by claim 8 of the plaintiff's patent (Exhibit P–42) comprises a container with upright back wall (as viewed from the rear, the "back" wall is toward the front of the vehicle) and end walls and a closed bottom, all of which are rigid with respect to each other. The bottom forms a flat support for the container, which has the side thereof, opposite the back wall, open throughout a substantial portion of the height of the container, so as to form a large discharge opening for dumping the contents therefrom. Upper and lower doors are hinged to each other and the upper door is hinged to the upper edge portion of the container, whereby the doors substantially close the large open side of the container, but are capable of moving automatically to open positions when the contents are to be discharged. Resilient means is connected with the lower door, normally tending to move the lower door to an open position with respect to the upper door when the latches are released and the contents are to be dumped. Means are provided for securing the doors in closed position, including separate latch means on the lower portion of the lower door connecting it with the end walls of the container which normally hold the doors closed, but which can be released for opening the doors to dump the contents from the container.

7. Plaintiff built only eight containers like the patent in suit. The patented container suitably met criticisms of the standard container furnished one purchaser by the plaintiff. This criticism was that the standard container had limited storage for liquids and leaked while resting at collection points and along the route to the dump. The patented container has had no other commercial acceptance or usage. The plaintiff now utilizes a radically different design for containers for trash and garbage.

## Prior Art

8. Prior art patents in the refuse container and transportation vehicle art, not cited by the Patent Office, show a four-sided container with a bottom and with one side "open", or capable of being opened, throughout a substantial portion of its height: Powers 1,065,271 (1913), Streich 1,106,523 (1914), Urban

---

tially to close said open side of the container and to be moved to an open position for discharge of the contents from the container, means for securing the doors in closed positions including separate latch means connecting the lower portion of the lower door with the respective end walls of the container, and resilient means connected with the last mentioned door, normally tending to move said door to an open position relative to the other coacting door when the latch means is released.

1,371,007 (1921), Robinson Reissue 17,-497 (1929) and Fouchee 14,117 (British; 1911).

9. Prior art patents not cited by the Patent Office show that upper and lower doors may be hinged together so as to open or close one side of a garbage container; Streich 1,106,523 (1914), and Clark 2,057,555 (1936).

10. Prior art patents not cited by the Patent Office show that springs or counterweights can be used to urge a door into an open position for dumping when the door is unlatched. These patents reveal that counterweights and springs have an equivalent function with respect to the door of such containers; Maurer et al. 710,391 (1902), and Barnett 327,583 (British; 1930).

11. Plaintiff's president patented a container with parallel vertical doors opened by springs, U. S. Patent No. 2,-464,441, which issued March 15, 1949, and the use of springs in this patent is prior art to the Jones patent, upon which defendant can rely.

12. The use of latches to lock doors shut is generally old. They are shown in the following prior art patents: Hovas 836,188 (1906), and in the Robinson, Streich, Maurer and Clark patents previously mentioned.

13. Brooks began about 1937 to manufacture rubbish containers and trucks. Since 1940 Brooks and Borg-Warner have used the same basic hoisting mechanism for lifting and dumping refuse containers shown in Brooks Patent No. 2,313,514, issued March 9, 1943, upon an application filed April 10, 1940. (Exhibits D–15, D–16.)

14. Brooks developed and sold between 1945 and 1950, its "HS", "ES", and "AB" containers. These models, sold to North American Rayon Corporation in 1947 (Exhibits D–17B, P–43, P–44), United Aircraft Corporation in 1950 (Exhibit D–18), Celanese Corporation in 1950 (Exhibit D–20), General Motors in 1950 (Exhibits D–19, P–45), and Sylvania Electric Products in 1951 (Exhibit 21), used a variety of double or single doors and latch arrangements according to the customers' requirements. The use of a double door in the Jones patent was not unusual.

15. Defendant's accused containers are the culmination of defendant's own product development over a period of years and involve the arrangement and rearrangement of familiar mechanical devices to meet varying customer requirements.

16. Defendant developed containers and sold them commercially before the Jones patent. This is shown by clear and convincing evidence, including contemporaneous drawings, work orders, invoices, and other documents, made and retained in the ordinary course of business. The witnesses Reese English and L. W. Sexton testified about many of the events of which the documents are evidence. One or both of these witnesses was concerned with many of these events and prepared many of the documents offered in evidence.

### Defendant's Accused Containers

17. Brooks in 1953 began to manufacture and sell the accused "GR" container (Exhibit P. 7a–d), which included many of the features which Brooks had developed in its earlier containers in the four side walls, bottom and top walls; double horizontal doors, hinged together on the dumping side with the upper door hinged to the top of the container; and latches on the side walls to fasten the lower door shut. This container had springs tensioned to open the lower door when the latches were released.

18. After plaintiff's patent had issued on February 15, 1955 and plaintiff had accused defendant's containers of infringement, defendant, to avoid controversy, modified its containers by moving the latches from the side walls of the container to the "lip" or the lower edge of the dumping opening and the lower edge of the lower door (Exhibits P. 8 and 9). This change was made immediately after April 5, 1955. This modified structure was embodied in defend-

ant's model (Exhibit D–22). The construction of the "GR" container was such that it has, at no time, used latches on its upper door. (Exhibits P. 7a–d, 8 and 9).

### Comparison of Claim 8 and Defendant's Accused Containers

19. In soliciting the patent, Jones' patent solicitors limited the following phrase of Claim 8 to latch means on the sides of the containers

"* * * means for securing the doors in closed positions, including separate latch means connecting the lower portion of the lower door with the respective end walls of the container * * *"

by insisting that the precise location was the essence of the invention and explicitly distinguishing over prior art references in which the latch means were located at the bottom edge of the lower dumping door. (Exhibit D–1).

20. The first seven claims of the Jones patent had been allowed by June 30, 1954 (Exhibit D–1). Plaintiff admits that its representatives had examined or photographed defendant's "GR" container on display at the Public Works Congress and Equipment Show in New Orleans, Louisiana in October, 1953. Thirteen months later (December 22, 1954) plaintiff's patent solicitor added Claim 22, which finally issued as Claim 8 (Exhibit D–1). Plaintiff's solicitor represented to the Patent Office that Claim 22 was limited to the location of the latch means on *both* end (side) walls but that Claim 22 was "otherwise * * directed to substantially the same subject matter as original Claim 21", which is now Claim 7 (Exhibit D–1).

21. Claim 7[2] requires "separate latching means for the *respective* doors." By his representation to the Patent Office, Jones incorporated into Claim 8 the same limitation which appears in Claim 7, the latter explicitly demanding "separate latch means for the *respective* doors," i. e., both upper and lower doors.

22. Neither defendant's "GR" container nor its modified "GR" container has latch means on both doors, or, in the claim language, on "the respective doors."

### Conclusions of Law

The Court has jurisdiction of the parties and of the cause of action embodied in the complaint.

### Invention

■■ The patent in suit on a container for trash, garbage and other refuse comprises an aggregation of elements, every one of which was old at the time the patent was applied for. Both plaintiff and defendant had, prior to filing of the application, devised and constructed portable containers for use with a truck equipped with a hoist. There was nothing new about a container the bottom portion of which was fluid-tight for the purpose of containing liquids. Doors were old. Double doors, hinged together on either a vertical or horizontal axis and tending to fold together along the axis to take up less space when they are opened, are old. An example of the vertical type is found in the doors of a telephone booth. Example of the horizontal are found in Streich's Dumping Wagon and in Clark's sectionalized overhead door for closed vehicles. Latches to close doors are old and of innumerable kinds. Resilient

---

2. *Claim 7.* A container of the character described comprising an upright back wall and upright end walls rigidly secured together, said container having the side thereof opposite the back wall substantially open throughout the height of the container, and a closed horizontal bottom rigid with said back wall and ends and substantially flat forming a support upon which the container may rest in upright position, upper and lower doors hinged together about a substantially horizontal axis and the upper door being hinged to the container at the upper edge portion thereof substantially to close said open side of the container and to be moved to an open position for discharge of the contents from the container, and separate latch means for the respective doors connected with an end wall of the container.

means mounted on hinged doors for assistance in their functioning when latches are released are old. Examples of the latter are found in Maurer's hinged flaps or doors on discharge passages on railway cars and indeed on the containers in the Patent to Dempster, No. 2,464,-441, issued on March 15, 1949.

All the elements found in the plaintiff's patent are old and each of them is found on patents issued in related arts. But for the fact that Streich's dumping body was attached to a vehicle and not portable, defendant's "GR" container has more resemblance to Streich than to the Jones patent in suit.

The elements and functioning of the plaintiff's patent are easily observed and apprehended. There is nothing obscure about either. Nevertheless, it is recognized that patentable inventions often involve a combination of elements, each of which is known in prior art. On the other hand, it is also recognized that a combination to amount to invention must achieve a new result or an old result in a better way. In General Motors Corp., v. Estate Stove Company, 6 Cir., 1953, 203 F.2d 912, 917, certiorari denied 346 U.S. 822, 74 S.Ct. 37, 98 L.Ed. 348, our Court of Appeals has put it this way:

> "But the combination of the old parts or elements, in order to constitute patentable invention, must perform or produce a new and different function or operation than that theretofore performed or produced by them. It is not sufficient that the combination be superior to what went before in producing a more convenient and economical mechanism. Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196. Where a patentee combines the best features of old structures without the disadvantages of any of them, resulting in a substantial improvement in performance over anything which had gone before, it must be found, in order to sustain the patent, that the increase of efficiency of the new combination is an ' "unusual

or surprising" consequence of the unification'; McCord Corp. v. Beacon Auto Radiator Co., Inc., 1 Cir., 193 F.2d 985, 989; or yields some 'surprising or extraordinary result'; Packwood v. Briggs & Stratton Corp., 3 Cir., 195 F.2d 971; and we adhere to our view that such a consequence and result were not achieved by the patents in suit."

In that case the Court freely found that the patent in suit had resulted in considerable advantage from the standpoint of convenience over what had gone before, and may even have filled a long-felt want, but concluded that these circumstances were not enough to warrant a finding of invention under the "severe test" applicable in the present day of the rapid advance of the arts.

This case, which has been widely and approvingly cited, and the case of Bobertz v. General Motors Corporation, 6 Cir., 228 F.2d 94, are the last word of the Sixth Circuit Court of Appeals on the question whether the newly enacted Patent Codification Act, 35 U.S.C.A. § 1 et seq. modified the exacting standard for combination claims established by the Supreme Court in Great Atlantic & Pac. Tea Co. v. Supermarket Equipment Corp. 340 U.S. 147, 71 S.Ct. 127, 95 L. Ed. 162. Although the Court of Appeals in the General Motors case (supra) held that the new Act did not apply to a case instituted before the enactment of the Act, it did expressly hold that the Great Atlantic & Pac. Tea Company case was not modified by the Act as to combination claims but continues to be the law. And, the three decisions are controlling upon us here. See also Vincent v. Suni-Citrus Products Co., 5 Cir., 215 F.2d 305, 315.

With this digression we return to a consideration of the functioning of plaintiff's combination. After it substituted a liquid-tight bottom to its container which would hold liquids to a depth of about 10″, in lieu of the drop-bottom type, which had leaked around the joints, plaintiff had to provide another outlet for discharge of the contents. As

testified by Mr. Jones, this required a large opening because the wet and dry materials in garbage and refuse tended to interlace and become one mass. Plaintiff, therefore, designed a door on its Zia container, which was substantially the whole back wall thereof above the 10″ lip of the Sump. This door was hinged at the top. In dumping, the container was revolved clockwise (to an observer facing the left side of the truck). When the container was revolved into discharging position and the latches were loosed, this back wall or door opened and the contents tended to flow out. It was found that a single door hinged at the top tended to dig into the ground when it opened and drag over the refuse when the truck moved forward. So, plaintiff sectionalized its door into two parts, which were hinged together on a horizontal line. Springs were provided along the top and along the sectional hinges which tended to open the doors at a wider angle than that to which they would normally open under the influence of gravity. The lower section tended to deflect farther away from the container than did the single door and tended not to dig into the ground, and not to drag over the refuse as the truck moved forward. Except for the latches, whose function is so old and well known as to require no discussion, this constituted the combination and its operation.

To recapitulate: In the standard model the drop bottom door leaked around the joint. So, an integral water-tight floor was provided. The drop bottom door was replaced by a door which was also one of the walls and which was hinged at the top so that it opened from the bottom for approximately the entire space of the wall. This door tended to strike the ground when it opened. So, provision was made to fold it back in sections. The sectional doors did not open wide enough by gravity alone, so springs were provided to open them wider.

These are such obvious expedients, we have no difficulty in concluding that their aggregation into one device did not constitute invention.

As Judge (now Mr. Justice) Stewart said in Cold Metal Products Company v. Newport Steel Corporation, 6 Cir., 226 F. 2d 19, 22:

"In view of the then state of the art, we think that the particular mechanical arrangements disclosed by the patents in suit represented nothing more that a felicitous selection of known elements, none of which contributed in combination any new or unusual functions, and that the subject matter as a whole would have been obvious at the time the claimed inventions were made to persons having ordinary skill in the art * * *. 35 U.S.C.A. § 103."

See also Vermont Structural Slate Company, Inc., v. Tatko Brothers Slate Co., Inc., 2 Cir., 233 F.2d 9, 11; Bobertz v. General Motors Corp., supra, 228 F.2d at pages 98, 99; McCord Corp. v. Beacon Auto Radiator Co., 1 Cir., 193 F.2d 985, 988, 989; Consolidated Trimming Corporation v. Loudon, 99 U.S.App.D.C. 213, 239 F.2d 33, 36; Wasserman v. Burgess & Blacher Co., 1 Cir., 217 F.2d 402, 404; Oriental Foods Inc. v. Chun King Sales, 9 Cir., 244 F.2d 909, 913.

### Infringement

■■ Defendant contends that even if Claim 8 were held valid, its containers do not infringe. This contention is based upon a precise reading of the language of the claim and upon the severe limitations placed by plaintiff upon the scope of the patent in the hearings before the Examiner.

Claim 8 calls for " * * * means for securing the doors in closed positions including separate latch means connecting the lower portion of the lower door with the respective end walls of the container * * *."

Giving effect to all the language of this portion of Claim 8, the Court can reach no other conclusion than that separate closure, or fastening, means are claimed for each door. The comprehensive language used is, "means for secur-

ing the doors [plural] in closed position * * *." Without more, this language could cover the latch means on the lower door of defendant's device, which, because of the co-acting construction of the two doors was designed to secure both doors. But the claim goes further, "the means for securing the [two] doors in closed positions" included the particular described means for fastening the lower door, leaving undescribed the means used for fastening the upper door.

It is argued that since the means is undescribed for the upper door it could include the single means used by defendant for closing its lower door, which was designed also to close the upper door. This argument ignores the niceties of language used by the patentee in drafting the claim. To reach this conclusion the claim would have had to use language such as "consisting of" in lieu of the words "including separate" in the clause under consideration. Had such language been used it would have been clear that the latch means for securing both doors consisted simply of the latch means securing the lower door to the end walls. But, when the words "including separate" are used, we are forced to conclude that dual, and separately functioning means were claimed which included the separate (in the sense of distinct) means used on the lower door. The fact that the specific means utilized to fasten the upper door was undescribed is immaterial since, under the language used, it had to be means operating independently of the "separate latch means" provided and described for the lower door.

Since plaintiff has made the argument at the trial that the single latch means of defendant is covered by the language of the claim, we are permitted, in case of doubt, to inquire into the precise concept of the inventor measured by his representations in the file wrapper history. Cincinnati Milling Machine Co. v. Turchan, 6 Cir., 208 F.2d 222, 227; Wiegand v. W. Bingham Company, 6 Cir., 106 F. 2d 546, 548.

Two references are conclusive. In his remarks under the application for original Claim 22, which became Claim 8 in the patent, applicant said,

"* * * It is believed that applicant should have a claim that is directed to the location of the latch means on both end walls, as defined in newly presented claim 22, which otherwise is directed to substantially the same subject matter as original claim 21 [Claim 7 in the Patent], * * *."

When we refer to Claim 7, we find that it calls for "separate latch means for the respective doors connected with an end wall of the container," and conclude that in Claim 8 as in Claim 7, plaintiff was claiming separate and distinct latch means for each door, something that defendant does not have either on its original or modified "GR" containers. Thus, reference to the file wrapper enforces our conclusion that defendant's device does not infringe.

It is unnecessary to go into the further refinement that defendant's modified "GR" container provides latch means between the lower door and the lip rather than between the lower door and the end walls as emphasized by patentee in the file wrapper.

We would point out finally that defendant's unmodified "GR" container was exhibited in New Orleans in October, 1953, fully thirteen months prior to the filing of the application on December 22, 1954, which resulted in the issuance of Claim 8. This was fatal to Claim 8 under Title 35 U.S.C.A. § 102 (b), in so far as it is asserted that the claim covers the unmodified "GR" container. Muncie Gear Works v. Outboard Marine & Manufacturing Co., 315 U.S. 759, 768, 62 S.Ct. 865, 86 L.Ed. 1171.

A judgment will be entered that the claim in suit is invalid, and if valid is uninfringed. Court costs will be assessed against the plaintiff.